Adolphe E. **SMYLIE**, Appellant
(Defendant below),

v.

**STATE of Indiana,** Appellee
(Plaintiff below).

No. 41S01–0409–CR–408.

Supreme Court of Indiana.

March 9, 2005.

Robert W. Hammerle, Joseph M. Cleary, Indianapolis, IN, Attorneys for Appellant.

Ann M. Sutton, Kathleen M. Sweeney, Marion County Public Defender Agency, Michael R. Limrick, Indianapolis, IN, Joel M. Schumm, Indiana University School of Law–Indianapolis, Attorneys for Amicus Curiae.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Ellen H. Meilaender, Deputy Attorneys General, Attorneys for Appellee.

Kim Hall, Stephen J. Johnson, Indiana Prosecuting Attorneys Council, Attorneys for Amicus Curiae.

SHEPARD, Chief Justice.

### Introduction

In this appeal and several similar cases, the defendants challenge the constitutionality of their sentences under *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The U.S. Supreme Court's latest word on the constitutionality of sentencing schemes is just eight weeks old. *United States v. Booker,* — U.S. —, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

Attempting to take account of both *Blakely* and *Booker,* we hold today that portions of Indiana's sentencing scheme violate the Sixth Amendment's right to

trial by jury, and that the new rule of *Blakely* should apply to all cases pending on direct review at the time *Blakely* was announced in which the appellant has adequately preserved appellate review of the sentence.

### Facts and Procedural History

On separate occasions from May 2001 through May 2002, Smylie molested his step-daughter B.J., who was under the age of 14 at the time. The State initially charged Smylie with two counts of child molesting, a class C felony. Ind.Code Ann. § 35–42–4–3(b) (West 2004). It later amended the charges to two counts of child solicitation, a class D felony. Smylie pled guilty to the amended charges.

The Indiana Code provides that the penalty for a class D felony is a "fixed term" of one and one-half years, with a maximum of one and one-half years added for aggravating circumstances and up to a year subtracted for mitigating circumstances. Ind.Code Ann. § 35–50–2–7 (West 2004). At the sentencing hearing, the trial court judge found four aggravating circumstances: 1) Smylie's pattern of criminal activity, 2) his position of trust with the victim, 3) the effect of the crime on the victim, and 4) the imposition of a reduced or suspended sentence would depreciate the seriousness of the crime. The court found two mitigating circumstances: Smylie had no criminal history, and he was likely to respond to probation or short-term imprisonment. It sentenced him to consecutive two-year terms on each of the counts, with six months suspended, for a total of three and one-half years.

### I. Indiana's Sentencing System Is Unconstitutional

*A. Our "Fixed Terms" Are Much Like Washington's Presumptive Ranges*

On June 24, 2004, the U.S. Supreme Court issued its decision in *Blakely v.* *Washington,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Writing for a 5–4 majority, Justice Scalia declared that Blakely's sentence, enhanced based on various facts found by the sentencing judge, violated Blakely's Sixth Amendment right to a jury trial. *Id.* at ——, 124 S.Ct. at 2538. This decision has cast doubt over the constitutionality of sentencing schemes throughout the country.

Blakely pled guilty to second-degree kidnapping involving domestic violence and use of a firearm, a class B felony. Washington state law capped punishment for a class B felony at 10 years. *See Blakely,* 542 U.S. at ——, 124 S.Ct. at 2535. According to Washington's Sentencing Reform Act, the standard sentencing range for Blakely's crime was 49 to 53 months. *Id.* The trial court judge imposed a sentence of 90 months—37 months over the standard range—pursuant to a Washington statute that allowed an increased sentence if a judge found "substantial and compelling reasons justifying an exceptional sentence." *Id.* (quoting Wash. Rev. Code Ann. § 9.94A.120(2) (2000)). The Washington trial judge had relied on "deliberate cruelty", an aggravating factor enumerated in the statutes. *Id.*

In analyzing the constitutionality of Washington's sentencing scheme, the Court began by reiterating the Sixth Amendment rule announced in *Apprendi v. New Jersey:*[1] "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2536. While many who read *Apprendi* deduced that "statutory maximum" meant "statutory maximum,"

---

1. 530 U.S. 466, 490, 120 S.Ct. 2348, 147    L.Ed.2d 435 (2000).

the *Blakely* majority chose to define it as "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" *Id.* at ——, 124 S.Ct. at 2537. The statutory maximum was thus not the 10-year cap on class B felonies, but rather the standard sentencing range under the Washington Sentencing Reform Act. *Id.* at ——, 124 S.Ct. at 2538.

Blakely admitted to the facts of a crime carrying a sentence of 49–53 months, and if there were any additional facts used to increase the sentence, the Court said, Blakely was entitled to have them found by a jury beyond a reasonable doubt. *Id.* at ——, 124 S.Ct. at 2537–38. Washington's sentencing procedure, to the extent it allowed a judge to increase the sentence above the "statutory maximum" based on the judge's findings, violated the Sixth Amendment. *Id.* at ——, 124 S.Ct. at 2538.

■ Whether this represents sound jurisprudence or policy is of no moment for us under the Supremacy Clause, and we cannot see any grounds for sustaining Indiana's sentencing scheme given the *Blakely* holding. Indiana's sentencing scheme provides a "fixed term" presumptive sentence for each class of felonies. *See* Ind.Code Ann. §§ 35–50–2–3 to 7 (West 2004). These statutes also create upper and lower boundaries for each felony sentence. *Id.* In deciding on whether to depart from the presumptive sentence, the trial judge must consider seven enumerated factors and may consider various other aggravating and mitigating factors. Ind.Code Ann. § 35–38–1–7.1 (West 2004).

From the time Indiana adopted its present sentencing arrangement in 1977, we have understood it as a regime that re-

quires a given presumptive term for each class of crimes, except when the judge finds aggravating or mitigating circumstances deemed adequate to justify adding or subtracting years. *See, e.g., Henderson v. State,* 769 N.E.2d 172, 179 (Ind.2002); *Page v. State,* 424 N.E.2d 1021, 1022–24 (Ind.1981); *Gardner v. State,* 270 Ind. 627, 631–36, 388 N.E.2d 513, 516–19 (1979). This flows from the words of the substantive sentencing provisions. The provision applicable to Smylie's crime mirrors those for other classes of felonies: "A person who commits a Class D felony shall be imprisoned for a fixed term of one and one-half (1½) years, with not more than one and one-half (1½) years added for aggravating circumstances or not more than one (1) year subtracted for mitigating circumstances." Ind.Code Ann. § 35–50–2–7(a) (West 2004).

■ For *Blakely* purposes, Indiana's "fixed term" is the functional equivalent of Washington's "standard sentencing range." Both establish a mandatory starting point for sentencing criminals based on the elements of proof necessary to prove a particular offense and the sentencing class into which the offense falls. The trial court judge then must engage in judicial fact-finding during sentencing if a sentence greater than the presumptive fixed term is to be imposed.[2] It is this type of judicial fact-finding that concerned the Court in *Blakely.* "When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts 'which the law makes essential to the punishment.'" *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2537 (quoting 1 J. Bishop, *Criminal Procedure* § 87 (2d ed. 1872)). While the Attorney General has ably defended the statutes on other grounds we discuss

---

**2.** Although Indiana's fixed term is a definitive amount of time and Washington's presumptive sentence is a range, this difference is merely in form.

below, we see little daylight between the *Blakely* holding and the Indiana system.

## B. Ours Is Not A Simple "Range" System

The Attorney General argues that Indiana's sentencing statutes establish a system of ranges for felony convictions, within which a judge can work in fashioning a sentence. The State also asserts that the "fixed term" presumptive sentence is merely a guidepost for judges operating within the ranges. (Appellee's Resp. Pet. Transfer at 6.) According to the State, Indiana's sentencing statutes do not violate *Blakely* because the "statutory maximum" is the upper limit of the range, rather than the presumptive sentence. (*Id.* at 6–7.)

We find ourselves unable to embrace this plausible contention for two reasons. First, the *Blakely* majority rejected a nearly identical argument, saying that "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537. Indiana's felony sentencing statutes provide "fixed terms" and allow departures only if aggravating or mitigating factors are found.[3] Ind.Code Ann. §§ 35–50–2–3 to 7 (West 2004). These factors are assessed by the judge alone. Ind.Code Ann. § 35–38–1–7.1 (West 2004). If the trial court adds or subtracts from the standard fixed term, the judge must: 1) identify all significant aggravating and mitigating factors; 2) specify the findings of fact and reasons which lead the court to find such factors; and 3) articulate that the aggravating and mitigating factors were evaluated and balanced in determination of the sentence. *Trowbridge v. State*, 717 N.E.2d 138, 149 (Ind.1999).

Second, the State's argument runs contrary to the interpretation of the Indiana statutory scheme as articulated and implemented by our trial and appellate courts over parts of four decades. Because the judge has to find additional facts to impose a sentence higher than the presumptive sentence, the presumptive sentence is the "relevant statutory maximum." *See Blakely*, 542 U.S. at ——, 124 S.Ct. at 2537.

The State also points to the *Blakely* Court's disapproval of a sentencing system that allows a judge to rely on a probation officer's report to increase a defendant's maximum potential sentence dramatically without warning the defendant either at the time of the indictment or the plea. *Blakely*, 542 U.S. at ——, 124 S.Ct. at 2542. (Appellee's Br. Resp. Br. of *Amicus Curiae* Marion County Public Defender Agency at 9–10.) It contends that Indiana's regime does not allow what Justice Scalia called an "unexpected increase"[4] in as much as defendants are aware of the maximum sentence that can be imposed for any given felony, namely, the range listed in the sentencing statutes.

Fatal to this assertion is the fact that Washington's system gave similar notification. Washington's statutes theoretically informed defendants that a sentence may be increased to a statutory upper limit if "substantial and compelling reasons justify an exceptional sentence." Wash. Rev.

---

3. Ind.Code Ann. §§ 35–50–2–3 to 7 (West 2004) provide that years can be "added for aggravating circumstances," which implies that aggravators are the only relevant inquiry in increasing a sentence. In fact, the absence of an aggravator requires a presumptive sentence. *Henderson v. State*, 769 N.E.2d 172, 180 (Ind.2002).

4. *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2535.

Code Ann. § 9.94A.120(2) (2000).[5] This upper limit in Washington, ten years for a class B felony, still allowed a sentence to "balloon" from the statutory maximum based on judicial fact-finding.[6] The increase was "unexpected" in one important sense, namely that the aggravators used to support a departure from the presumptive are not charged in the indictment. *See McCormick v. State*, 233 Ind. 281, 119 N.E.2d 5 (1954) (charging information need only contain essential elements of crime to notify defendant of what crime is charged). The Court was apparently unconvinced that this notification problem is remedied by any awareness by the defendant of the upper limit. *See Blakely*, 542 U.S. at —, 124 S.Ct. at 2538–42.

## C. What Is the Effect of this Blakely Violation?

■ The foregoing conclusion about the unconstitutionality of Indiana's present sentencing system hardly nullifies the entire arrangement. We have historically rescued constitutional portions of statutes, if possible, when other portions are held unconstitutional. *See, e.g., State v. Barker*, 809 N.E.2d 312 (Ind.2004); *State v. Kuebel*, 241 Ind. 268, 172 N.E.2d 45 (1961). We have adopted the severability test enunciated in *Dorchy v. Kansas:*

> A statute bad in part is not necessarily void in its entirety. Provisions within the legislative power may stand if separable from the bad. But a provision, inherently unobjectionable, cannot be deemed separable unless it appears both that, standing alone, legal effect can be given to it and that the legislature intended the provision

to stand, in case others included in the act and held bad should fall.[7]

■ It is apparent that Indiana's sentencing system runs afoul of the Sixth Amendment not because it mandates a "fixed term" sentence for each felony, but because it mandates *both* a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term. A constitutional scheme akin to ours could take one of two forms: (1) our present arrangement of fixed presumptive terms, modified to require jury findings on facts in aggravation, or (2) a system in which there is no stated "fixed term" (or at least none that has legally binding effect) in which judges would impose sentences without a jury.

The U.S. Supreme Court, in its most recent installment in this Sixth Amendment saga, applied *Blakely* to the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. —, 125 S.Ct. 738, 746, 160 L.Ed.2d 621 (2005). The Court's solution was to sever and excise a portion of the sentencing statute that made the sentence indicated by the Guidelines range mandatory unless the trial court found aggravating or mitigating circumstances not adequately considered by the U.S. Sentencing Commission. This excising produced an arrangement like the second option described above. *Blakely* had explicitly sanctioned such regimes. *Blakely*, 542 U.S. at —, 124 S.Ct. at 2540 (indeterminate sentencing by judges and parole boards not a violation of Sixth Amendment).

Our conclusion about severability leads to an outcome more like the first choice mentioned above. In excising only the minimal portions of the existing statute

---

**5.** Citations are to the Washington Code as it existed at the time of Blakely's sentencing.

**6.** Wash. Rev.Code Ann. § 9A.20.021 (2000).

**7.** 264 U.S. 286, 289–90, 44 S.Ct. 323, 68 L.Ed. 686 (1924)(internal citations omitted).

necessary to comply with *Blakely,* we are much influenced by the fact that the over-arching theme of Indiana's 1977 sentencing reform was a legislative decision to abandon indeterminate sentencing in favor of fixed and predictable penalties. The 1977 act assigned to judges the task of imposing penalties stated as a fixed term of years and created a structure for setting those penalties that is far more definitive than the scheme it replaced.

We conclude that the first option listed above is probably more faithful to the large objectives of the General Assembly's 1977 decisions. We thus hold that the sort of facts envisioned by *Blakely* as necessitating a jury finding must be found by a jury under Indiana's existing sentencing laws.

### D. *Blakely Does Not Invalidate Indiana's Arrangement for Consecutive Terms*

■■■ Having concluded that Indiana's system for enhanced sentences contravenes *Blakely,* we turn to a closely related issue posed by Smylie.

When sentencing a defendant on multiple counts, an Indiana trial judge may impose a consecutive sentence if he or she finds at least one aggravator.[8] *Ortiz v. State,* 766 N.E.2d 370 (Ind.2002); *Morgan v. State,* 675 N.E.2d 1067 (Ind.1996). A defendant does have the right to the exercise of a trial court's discretion.[9] Certainly, where a judge finds that aggravating

and mitigating circumstances are in equipoise, we have required concurrent sentences, *Marcum v. State,* 725 N.E.2d 852, 863-64 (Ind.2000), just as we have where the court has not found any aggravating circumstances at all. *Hansford v. State,* 490 N.E.2d 1083, 1094 (Ind.1986). But our statutes do not erect any target or presumption concerning concurrent or consecutive sentences. Where the criminal law leaves sentencing to the unguided discretion of the judge there is no "judicial impingement upon the traditional role of the jury." *Blakely,* 542 U.S. at ——, 124 S.Ct. at 2540.

We find no language in *Blakely* or in Indiana's sentencing statutes that requires or even favors concurrent sentencing. *See generally, Blakely,* 542 U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); Ind. Code Ann. § 35–50–1–2 (West 2004). The trial court's sentencing of Smylie to consecutive terms after finding an aggravating circumstance did not increase the sentence above the statutory maximum for each offense. *See State v. Abdullah,* 372 N.J.Super. 252, 858 A.2d 19, 39 (App.Div. 2004) *certification granted* ("Although the imposition of consecutive terms ... increase[s a] defendant's punishment, [it does] not increase the penalty above what the law provides for the offense charged.").[10] There is no constitutional problem with consecutive sentencing so long as the trial court does not exceed the combined statutory maximums.

8. Ind.Code Ann. § 35–50–1–2(c) (West 2004) provides that aggravating and mitigating circumstances may be a consideration in imposing concurrent or consecutive sentences. Indiana's caselaw has developed to make an aggravating circumstance a requirement before a consecutive sentence may be imposed. *See Shippen v. State,* 477 N.E.2d 903, 905 (Ind.1985); *Mott v. State,* 273 Ind. 216, 220, 402 N.E.2d 986, 988 (1980).

9. Ind.Code Ann. § 35–50–1–2(c) (West 2004).

10. The Court of Appeals upheld only one of the four aggravators found by the trial court, *Smylie v. State,* 807 N.E.2d 809, 41A01–0309–CR–339, slip op. at 5 (Ind. Ct.App. April 13, 2004) (mem.) *trans. granted,* but just one *may* be enough. *Ortiz v. State,* 766 N.E.2d 370, 377 (Ind.2002); *Morgan v. State,* 675 N.E.2d 1067, 1073 (Ind.1996).

*E. Smylie's Sentence*

The trial court sentenced Smylie to two years for each count of class D felony child solicitation, six months above the standard fixed term. The aggravating factors used to enhance the sentence were not submitted to the jury or admitted by Smylie. The enhancement cannot be imposed without jury findings. We reverse and remand for a new sentencing on these counts, should the State elect, with the intervention of a jury. The trial court's order of consecutive sentences is not defective, and we affirm it.

## II. Why is Smylie Entitled to Raise *Blakely* Issues on Appeal?

The State claims that Smylie has forfeited his right to pursue this issue. Smylie did not request that the trial court submit aggravating circumstances to a jury, nor did he raise a *Blakely* claim in his appellate brief, filed in January 2004. Under regular appellate practice, this would forfeit the claim.

*A. Blakely Establishes a "New Rule"*

■ It is firmly established that, "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a 'clear break' with the past." *Griffith v. Kentucky,* 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987). A rule is new for the purposes of retroactivity "if the result was not *dictated* by precedent existing at the time the defendant's conviction became final." *Teague v. Lane,* 489 U.S. 288, 301, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). *Blakely* was decided while Smylie's case was still pending on direct appeal, and thus, the initial question is whether the result in *Blakely* was dictated by existing precedent.

■ The State apparently concedes that *Blakely* constitutes a new rule for the purposes of retroactivity.[11] Correctly so. While *Blakely* certainly states that it is merely an application of "the rule we expressed in *Apprendi v. New Jersey,*" 542 U.S. at ——, 124 S.Ct. at 2536, it is clear that *Blakely* went beyond *Apprendi* by defining the term "statutory maximum." As the Seventh Circuit recently said, it "alters courts' understanding of 'statutory maximum'" and therefore runs contrary to the decisions of "every federal court of appeals [that had previously] held that *Apprendi* did not apply to guideline calculations made within the statutory maximum." *Simpson v. United States,* 376 F.3d 679, 681 (7th Cir.2004)(collecting cases). Because *Blakely* radically reshaped our understanding of a critical element of criminal procedure, and ran contrary to established precedent, we conclude that it represents a new rule of criminal procedure.[12]

11. "The State recognizes that *Blakely* can be read to establish a 'new rule'." (Resp. Pet. Transfer at 5.)

12. We also note that *Blakely* has created such controversy that the so-called owner of the "*Blakely* Blog," Professor Douglas A. Berman, of Moritz College of Law at The Ohio State University, has stopped tracking state cases related to *Blakely* because of the overwhelming number and diversity of the holdings. Douglas A. Berman, *In re State Blakely Interpretations,* (Dec. 9, 2004) *at* http://sen-tencing.typepad.com. That so many states are wrestling with the meaning of *Blakely* is further evidence of its unpredictability and a further indication that reasonable lawyers would not have known of the outcome.

The brief of amicus curiae, the Indiana Prosecuting Attorneys Council, prepared by Stephen J. Johnson, has been especially helpful in providing meaningful electronic resources. Mr. Johnson should be commended for utilizing a unique and useful legal resource in the service of his organization.

### B. Blakely Applies Retroactively to Cases on Direct Review

▮▮▮▮▮▮ Of course, as the State points out, the application of *Blakely* to any case pending on direct review remains subject to the standard rules governing appellate procedure such as waiver and forfeiture.[13]

▮▮▮▮ To receive the benefit of a new rule of law, a claimant must preserve the issue for appeal. In *Pirnat v. State*, 607 N.E.2d 973 (Ind.1993), for example, we considered the retroactive applicability of our decision about the admissibility of "depraved sexual instinct" evidence to cases pending on appeal at the time *Lannan v. State*, 600 N.E.2d 1334 (Ind.1992) was decided. We declared that "Pirnat and others *whose cases properly preserved the issue* and whose cases were pending on direct appeal at the time *Lannan* was decided receive the benefit of review under the new rule." *Pirnat*, 607 N.E.2d at 974 (emphasis added).[14] Pirnat had previously challenged the admission of the "depraved sexual instinct" evidence at trial and on appeal. *Pirnat v. State*, 596 N.E.2d 259 (Ind.Ct.App.1992).

We reached the same conclusion in *Coleman v. State*, 558 N.E.2d 1059 (Ind.1990), when we considered the retroactive applicability of the constitutional rule announced in *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987) and *South Carolina v. Gathers*, 490 U.S. 805, 109 S.Ct. 2207, 104 L.Ed.2d 876 (1989) to cases pending on direct appeal at the time those rules were announced.[15] Although we concluded that *Booth* and *Gathers* applied retroactively to cases pending on direct appeal, we made clear that we considered the rule to "apply to the direct appeal of a trial occurring before those cases were decided *so long as the appellant has preserved [the issue for appeal] by objecting at trial.*" *Coleman*, 558 N.E.2d at 1061 (emphasis added). We have utilized this same approach in other cases. *See, e.g., Ried v. State*, 615 N.E.2d 893 (Ind.1993); *Daniels v. State*, 561 N.E.2d 487 (Ind.1990).

▮▮▮▮ On this principle of appellate law, Indiana jurisprudence is rather ordinary. In *United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), for example, the Supreme Court applied the plain error test to a case pending on appeal when the new rule in *Apprendi* was announced. In so doing, the Court noted that Cotton's claim was "forfeited" because of his failure to object to alleged error at trial. *Id.* at 629, 631, 122 S.Ct. 1781. Similarly, in *Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997), the Court considered the retroactive application of the rule announced in *United States v. Gaudin*, 515 U.S. 506, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), to a case pending on appeal at the time of that

---

**13.** These terms are often used somewhat interchangeably, but they deal with distinct categories of non-appealable issues. Waiver indicates an "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). In contrast, forfeiture occurs when a party fails "to make the timely assertion of a right." *Olano*, 507 U.S. at 733, 113 S.Ct. 1770. Furthermore, while waiver generally precludes appellate review of an issue, in federal practice forfeiture permits appellate review, but limits such review to "plain error." *Id.; United States v. Levy*, 391 F.3d 1327, 1341–43 (11th Cir. 2004)(Tjoflat, J., dissenting).

**14.** *Cf. Pirnat v. State* 600 N.E.2d 1342 (Ind. 1992).

**15.** Although the rule announced in *Booth* and *Gathers* was eventually overruled by *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991), this does not impact our retroactivity analysis.

decision. In considering Johnson's claim, the Court noted that "[b]ecause petitioner is still on direct review, *Griffith* requires that we apply *Gaudin* retroactively." *Johnson*, 520 U.S. at 467, 117 S.Ct. 1544. The Court, however, still applied plain error review because of Johnson's failure to object at trial and preserve the error for appeal. *Id.* Unsurprisingly, a number of federal circuit cases reflect the same practice.[16]

Given this backdrop of precedent we believe that our approach regulating the retroactive application of a new rule to cases pending on direct appeal through the application of the rules governing appellate procedure is entirely consistent with the dictates of *Griffith.* As such, we agree with the State that it is entirely possible for defendants to have waived or forfeited their ability to appeal their sentence on *Blakely* grounds.

### C. What is Enough to Preserve a Blakely Challenge?

■ The State urges us to declare Smylie's claim forfeited because he failed to "lodge an objection at his sentencing hearing that his right to trial by jury was denied when the trial court found aggravating circumstances and imposed an enhanced sentence either generally or specifically based on *Apprendi.*" (Resp. Pet. Transfer at 4.) The State further stresses

that Blakely based his " 'exceptional' sentence" claim on *Apprendi* "just as Smylie should have if he found his sentence objectionable." (Resp. Pet. Transfer at 4–5.)

■ The State rightly points out that a claim is generally considered forfeited if it is not objected to at trial, *see Bruno v. State*, 774 N.E.2d 880 (Ind.2002), and it is certainly correct that Smylie could have objected on *Apprendi* or Sixth Amendment grounds at the time the trial court convened for the sentencing hearing. Because *Blakely* represents a new rule that was sufficiently novel that it would not have been generally predicted, much less envisioned to invalidate part of Indiana's sentencing structure, requiring a defendant or counsel to have prognosticated the outcome of *Blakely* or of today's decision would be unjust.

This is the same approach taken by the Seventh Circuit in several recent decisions. In *United States v. Pree*, 384 F.3d 378 (7th Cir.2004), the court noted that Pree did not "address to this court, nor can we find evidence in the record to indicate, that she addressed before the district court the constitutionality of her sentencing enhancement." *Id.* at 396. Despite this failure to raise an objection to her sentence at either the trial court or before the court of appeals, the Seventh Circuit nevertheless stated that "[g]iven the precedent in this circuit prior to *Blakely*, we think it would

---

**16.** *See, e.g., United States v. Rogers*, 118 F.3d 466, 470–71 (6th Cir.1997)(with respect to forfeited claim when intervening case establishes a new rule, "[w]e must apply the plain error doctrine to analyze the failure to submit the question of materiality to the jury."); *United States v. Levy*, 391 F.3d 1327, 1331 (11th Cir.2004)("*Griffith* cannot, and does not, control a situation in which the defendant ... never raised nor preserved a constitutional challenge, but, instead, raises it for the first time in a petition for rehearing."). Like the federal "plain error" doctrine, our "fundamental error" rule sometimes affords

relief to claimants who did not preserve an issue before the trial court and seek to raise it for the first time on appeal. Under our holding today, *Blakely* claimants who have appealed their sentences will be allowed to add a tardy *Blakely* claim and thus have no need to claim, "fundamental error." The fundamental error doctrine will not, as caselaw holds, be available to attempt retroactive application of *Blakely* through post-conviction relief. *See Sanders v. State*, 765 N.E.2d 591, 592 (Ind. 2002); *Canaan v. State*, 683 N.E.2d 227, 235 n. 6 (Ind.1997).

be unfair to characterize Ms. Pree as having waived a challenge to the validity of her sentencing enhancement." *Id.*

Likewise, the panel in *United States v. Henningsen,* 387 F.3d 585 (7th Cir.2004), concluded that the failure to object to a sentence on constitutional grounds did not constitute forfeiture of the *Blakely* issue for appeal.[17] The court noted that "Henningsen's challenge during sentencing and in his brief on appeal did not extend to the constitutionality of the enhancements." *Id.* at 591. However, while such failure to object would ordinarily constitute forfeiture, the court took note of the fact that Henningsen:

> made notice of the *Blakely* ... [decision] in a subsequent filing and raised the issue during argument. In light of the uncertainity surrounding this issue and the questionable constitutionality of Henningsen's sentencing enhancement, we do not find that Hennignsen has waived his right to challenge the validity of the district court's sentencing enhancement.[18]

■ We conclude that it is appropriate to be rather liberal in approaching whether an appellant and her lawyer have adequately preserved and raised a *Blakely* issue. A very tough *Blakely* preservation rule would prompt practitioners to fill trial time and appellate briefs with all imaginable contentions, contrary to the general advice that it is good practice to focus on the most viable issues. It would also drastically alter the burden imposed on counsel as to what constitutes effective assistance to their clients. As we said in *Fulmer v. State,* 523 N.E.2d 754 (Ind.1988), "An attorney is not required to anticipate

changes in the law and object accordingly" in order to be considered effective. *Id.* at 757–58. As we suggested above, a trial lawyer or an appellate lawyer would not be ineffective for proceeding without adding a *Blakely* claim before *Blakely* was decided. Consequently, we do not deem the failure to raise a Sixth Amendment objection to the trial court as it proceeded through sentencing to constitute forfeiture of a *Blakely* issue for purposes of appellate review.

Nevertheless, it does not ask too much that a criminal defendant have contested his or her sentence on appeal, even if the *Blakely* element of that contest is added later, as it has been by Smylie. Thus, we regard defendants such as Smylie who sought sentence relief from the Court of Appeals based on arbitrariness or unreasonableness (Appellant's Br. at 3), and who added a *Blakely* claim by amendment or on petition to transfer as having adequately presented the issue of the constitutionality of their sentence under *Blakely.*

■ Defendants who have appealed without raising any complaint at all about the propriety of their sentence have arguably made the sort of knowing and intelligent decision regarding their appeal that is required for waiver to exist. Thus, those defendants who have not raised objections to their sentences should be deemed to have at least forfeited, and likely waived, the issue for review.

*D. Summary*

First, as a new rule of constitutional procedure, we will apply *Blakely* retroactively to all cases on direct review at the

---

17. Although we are aware that the Seventh Circuit used the term "waiver" in both *Pree* and *Henningsen,* taken in context, and given the earlier discussion distinguishing forfeiture and waiver, we understand the court of appeals to have meant to include forfeiture in its use of the term waiver except insofar as we distinguish *Pree.*

18. *Henningsen,* 387 F.3d at 591.

time *Blakely* was announced. Second, a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering. Third, those defendants who did not appeal their sentence at all will have forfeited any *Blakely* claim.

### III. Disposition

We reverse that part of Smylie's sentence that enhances the standard penalty and remand for a new sentencing hearing in which the State may elect to prove adequate aggravating circumstances before a jury or accept the statutory fixed term. We affirm the order for consecutive sentences.

SULLIVAN, BOEHM, and RUCKER, JJ., concur.

DICKSON, J., dissents with separate opinion.

DICKSON, Justice, dissenting.

Because of recent decisions of the United States Supreme Court, the majority chooses to preserve the constitutionality of Indiana's criminal sentencing system by judicially severing statutory provisions that direct trial judges to consider aggravating and mitigating circumstances to determine sentences, and by engrafting a new procedure requiring that aggravating circumstances be submitted for jury determination. I prefer a less onerous construction that leaves intact the language of the statute and modifies only judicial precedent interpreting the statute.

Statutes must be accorded every reasonable presumption to support their validity, and if possible, we must adopt a reasonable construction that support their constitutionality. *Burris v. State*, 642 N.E.2d 961, 968 (Ind.1994); *Brady v. State*, 575 N.E.2d 981, 985 (Ind.1991); *Miller v.*

*State*, 517 N.E.2d 64, 71 (1987). In assessing the constitutionality of a statute, "we might well modify our view of the statute's demands if doing so would preserve its constitutionality." *A Woman's Choice–East Side v. Newman*, 671 N.E.2d 104, 110 (Ind.1996).

The majority correctly acknowledges that one possible option for Indiana's sentencing system to satisfy the United States Supreme Court requirements would be "a system in which there is no stated 'fixed term' (or at least none that has legally binding effect) in which judges would impose sentences without a jury." Opin. at 685. In fact, this is the approach recently implemented by the Supreme Court in applying its requirements to federal criminal sentencing. *United States v. Booker*, 543 U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).

This system is not inconsistent with the express language of Indiana Code § 35–38–1–7.1, which states in relevant part that "[i]n determining what sentence to impose for a crime, the court shall *consider*," *id.* (emphasis added), and then lists various possible aggravating and mitigating factors, in addition to which the statute declares that such factors "do not limit the matters that the court may *consider* in determining the sentence." Ind.Code § 35–38–1–7.1(d) (emphasis added). If the court finds aggravating or mitigating circumstances, it must at sentencing make a record of its "reasons for selecting the sentence that it imposes." Ind.Code § 35–38–1–3.

The rule that has developed in Indiana criminal sentencing is that enhanced sentences may only be imposed upon the judge's express determination of one or more aggravating factors. But this rule is not required by statutory language, which compels only general consideration of ag-

gravating and mitigating circumstances, and does not compel trial courts to find any particular aggravator as a prerequisite to imposing an enhanced sentence. Our current rule reflects an obligation that was gradually superimposed upon the statute by a series of judicial decisions. *See, e.g., Taylor v. State*, 181 Ind.App. 227, 230, 391 N.E.2d 662, 664 (1979) (affirming sentence because trial court did not treat sentencing guidelines as binding but rather as only a tool); *Gardner v. State*, 270 Ind. 627, 633, 388 N.E.2d 513, 517 (1979) (when increased sentences are imposed, trial court *should* disclose the factors considered, to facilitate appellate review for sentence reasonableness); *Abercrombie v. State*, 275 Ind. 407, 412, 417 N.E.2d 316, 319 (1981) (court's record of sentencing reasons serves two purposes: to confine the judge to proper grounds and to permit appellate court to determine reasonableness of sentence); *Dumbsky v. State*, 508 N.E.2d 1274, 1278 (Ind.1987) (*requiring* sentencing court to specifically identify aggravating circumstances serves dual purposes of providing an adequate basis for appellate review and guarding against arbitrary and capricious sentencing); *Bustamante v. State*, 557 N.E.2d 1313, 1321 (Ind.1990) (when judges impose enhanced sentences, they *must* make specific findings of aggravating circumstances); *Henderson v. State*, 769 N.E.2d 172, 179 (Ind.2002) (where trial court enhances presumptive sentence, it *must identify and explain aggravating circumstance*). To be sure, our current judicial construction mandating an affirmative finding of one or more aggravating factors as a prerequisite to imposing an enhanced sentence is now long-settled and serves well the sound policy of favoring fair, consistent, and predictable penalties. As this Court holds today, however, this system runs afoul of the federal constitutional prohibition against sentences that require a judge to find some addition-

al fact not found by a jury. *Booker*, 543 U.S. at ——, 125 S.Ct. at 749, 160 L.Ed.2d at 643; *Blakely v. Washington*, 542 U.S. 296, ——, 124 S.Ct. 2531, 2538, 159 L.Ed.2d 403, 415 (2004).

To comply with this requirement, we should judicially modify not the statutory language but our own precedents. The result would be that Indiana trial judges would continue to determine sentences in accordance with statute, with discretion to the fix the sentence within specific ranges already designated by the legislature for various categories of criminal offenses. As required by the statute, they must *consider* aggravating and mitigating circumstances, but their authority to impose a particular enhanced sentence would not be limited so as to require them to expressly find any particular aggravating circumstances.

Our Criminal Code provides that for each class of felony or misdemeanor, a person convicted "shall be imprisoned for a fixed term of" and specifies a specific number followed by a limited range of years that may be added or subtracted for aggravating or mitigating circumstances. *See* Ind.Code §§ 35–50–2–4 through –7, 35–50–3–2 through –4. We refer to this fixed number as the "presumptive" sentence for each class of offense. The presumptive sentences identified by statute would serve as non-binding recommendations, with our trial courts nevertheless empowered to exercise their sound discretion to fix the sentence at any point within the designated range, upon consideration of the aggravating and mitigating factors as found by the judge.

Not only would this method of compliance with federal constitutional requirements avoid the necessity of judicially altering statutory language, it would also avoid adding a new layer of jury sentencing hearings in criminal cases and the

attendant additional expense and delay. Adoption of such an approach would not be unusual. Notwithstanding today's decision of this Court, the legislature may still choose to modify Indiana's sentencing statutes to implement this system.

Independent of the above discussion, it should be noted that, under the new methodology created by the Court's opinion today, defendants who challenge their prior judge-determined sentence claiming entitlement to a jury determination of aggravating circumstances may ultimately receive a greater sentence. The trial court here sentenced Smylie to three and one-half years, after suspending six months. This is less than the maximum possible aggregate sentence of six years that the defendant was facing. Today's decision operates to vacate this sentence and to remand the case for a new sentencing hearing. If a jury then determines aggravating factors significantly different from those previously found by the trial judge, there is no reason that the defendant could not end up receiving the maximum sentence, which would be two and one-half years more than that originally imposed by the trial judge.