

ATTORNEY FOR APPELLANT

Victoria L. Bailey
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

Corey Lamont Spurlock,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 6, 2018

Court of Appeals Case No.
49A02-1708-CR-1875

Appeal from the Marion Superior Court

The Honorable Kurt Eisgruber, Judge

Trial Court Cause No.
49G01-0203-MR-84150

**Sharpnack, Senior Judge.**

## Statement of the Case

[1]     Corey Lamont Spurlock appeals the sentence imposed by the trial court at his resentencing. We affirm.

# Issue

Spurlock presents one issue for our review, which we restate as: whether the trial court erred in resentencing him.

# Facts and Procedural History

The facts underlying Spurlock's convictions, as set out in his direct appeal, are as follows:

> On November 3, 1999, Indianapolis Police Officers received a report of a dead body at 2427 North Oxford Street. There were no signs of forced entry at the address, but once there, officers found the dead bodies of Michael Haddix, Jr. and Crystal Davenport. Haddix had been shot three times including a fatal wound to the back of his head. Davenport had been fatally shot in the forehead.
>
> Haddix's father testified that it was likely that Haddix kept a gun in his house for protection. However, no weapon was retrieved from Haddix's residence after his death. Further, Haddix's father had given Haddix some money, and Haddix recently had won some money, but no cash was found in Haddix's home after his death.
>
> On November 12, 1999, Aurelia Mason heard gunshots coming from the residence of her next-door neighbors. When police officers arrived, there was no sign of forced entry at 2960 North Park Avenue, but officers found the dead bodies of Benjamin Boone and Doris Johnson [Johnson]. Boone had been fatally shot in the back of the head and neck. Johnson had been fatally shot three times in the back of the head and neck.
>
> Boone and Johnson both used crack cocaine in their house. There was also a gun inside the house. Ronald Freeman, Boone's friend, was at Boone's house in the evening on November 11, 1999. Freeman smoked crack cocaine with Boone

and Johnson, and then left shortly after two other men arrived at Boone's house. Freeman testified that as he walked away from the house he heard gunshots and saw the flash from a gun being fired. Police officers recovered several spent shell casings from the residence in addition to bullet fragments.

In March of 2002, during the course of another investigation, homicide detectives received information about a suspect in the four murders named "Lolo" and the location where "Lolo" lived. Detectives contacted Defendant's grandmother who told them that Defendant's nickname was "Lolo." Detective Roy West asked Defendant's grandmother to have Defendant contact him. That same day West received a phone call from Defendant. Defendant agreed to meet with West at the police headquarters the next day after Defendant finished work.

On March 7, 2002, Defendant arrived at police headquarters to discuss the four homicides that are the subject of this appeal. Defendant was shown some photographs to determine if he could identify any individuals included in the photo arrays. Defendant confirmed that one of his nicknames was "Lolo." Detectives West and Tudor advised Defendant of his rights and questioned him further about the homicides. Defendant made audio-taped statements to the detectives regarding the two incidents in November of 1999. Defendant identified Terrence Swann and Anthony "Banks" Johnson [Banks] as the primary perpetrators of the homicides that were committed as part of the robberies of those victims. Defendant returned home after giving those statements to the detectives.

The following day, Defendant telephoned Detective West and informed him that he was no longer going to cooperate with the police, and that what he had told them the previous day was not true.

*Spurlock v. State*, No. 49A05-0305-CR-247, slip op. at 2-4 (Ind. Ct. App. May 6, 2004).

[4] On March 26, 2002, the State charged Spurlock with four counts of murder,[1] two counts of conspiracy to commit robbery, both as Class A felonies,[2] and two counts of robbery, both as Class A felonies.[3] In March 2003, a jury trial was held, at the conclusion of which the jury returned verdicts of guilty on all counts. At sentencing, the trial court merged the two robbery convictions into the two conspiracy convictions and sentenced Spurlock to forty-five years on each of the four murder convictions, twenty years on one conspiracy conviction, and thirty years on the other conspiracy conviction. All the terms were to be served concurrently except the thirty years, which was to be served consecutively to the other terms, for an aggregate sentence of seventy-five years. Spurlock filed a direct appeal, and, on May 6, 2004, this Court issued a memorandum decision affirming his convictions. *See Spurlock*, No. 49A05-0305-CR-247.

[5] In March 2005, Spurlock filed a petition for post-conviction relief, which the trial court dismissed without prejudice on September 8, 2008, for failure to prosecute. In October 2014, Spurlock again filed a petition for post-conviction relief, which was later amended. Following a hearing and the filing of proposed findings by the parties, the trial court denied Spurlock's petition. Spurlock appealed, and, in February 2017, a panel of this Court affirmed in part

---

[1] Ind. Code § 35-42-1-1 (1997).

[2] Ind. Code §§ 35-41-5-2 (1977), 35-42-5-1 (1984).

[3] Ind. Code § 35-42-5-1.

and reversed in part the decision of the post-conviction court. *See Spurlock v. State*, No. 49A05-1609-PC-1976 (Ind. Ct. App. Feb. 17, 2017). It was determined that Spurlock's appellate counsel was ineffective for failing to raise a sentencing error, specifically that the bodily injury stemming from Spurlock's murder convictions was used also as the basis for elevating his conspiracy convictions to Class A felonies. *See id.*, slip op. at 18. Consequently, the case was remanded to the trial court for entry of judgment of conviction on the conspiracy counts to be reduced from Class A felonies to Class B felonies and for resentencing.

[6] On remand, the trial court resentenced Spurlock in July 2017 to a total of sixty-five years. He received forty-five years for each of the four murders and ten years for one of the conspiracy counts, all to be served concurrently. In addition, the trial court sentenced him to twenty years on the second conspiracy count, to be served consecutively to the other counts. He now appeals this sentence.

## Discussion and Decision

[7] Spurlock argues the trial court erred in resentencing him because his sentence does not conform to the dictates of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). *Blakely* applies and further explains the rule previously set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) prohibiting the reliance on facts not found by a jury or admitted by the defendant to enhance a sentence above the presumptive, with

the exception of criminal history. *Blakely*, 124 S. Ct. at 2536. We must first determine whether *Blakely* applies to the present case.

[8] Spurlock committed these crimes in 1999; he was originally sentenced in 2003; *Blakely* was decided in 2004; Spurlock was resentenced in 2017. The fact that Spurlock's crimes and original sentencing hearing took place pre-*Blakely* does not preclude him from being entitled to the *Blakely* protections upon resentencing post-*Blakely*. *See Ben-Yisrayl v. State*, 908 N.E.2d 1223, 1230-31 (Ind. Ct. App. 2009) (holding that defendant was entitled to resentencing hearing that complied with dictates of *Blakely* even though he committed crimes long before *Blakely* was decided and was resentenced after *Blakely* was decided), *trans. denied*. Having determined that Spurlock was entitled to the protections of *Blakely* at his resentencing, we turn to his failure to raise a *Blakely* objection during the resentencing process.

[9] In his brief to this Court, Spurlock concedes that he failed to make a *Blakely* objection at his resentencing hearing. Appellant's Br. p. 15. A claim is generally considered forfeited or waived if it is not raised in the trial court. *Smylie v. State*, 823 N.E.2d 679, 689 (Ind. 2005). Although stating this general rule, in *Smylie* our supreme court rejected such an argument because defendant's trial counsel could not have anticipated the holding of *Blakely* before it was even issued. Here, however, Spurlock's resentencing hearing was held in 2017, more than thirteen years after the *Blakely* decision and more than twelve years after the *Smylie* decision. As the issue was settled and well-known by the time of Spurlock's resentencing hearing, we conclude an objection was

required to preserve the issue for appeal. *See Smylie*, 823 N.E.2d at 689 (stating it is entirely possible for defendants to waive or forfeit their ability to appeal their sentence on *Blakely* grounds).

[10] In an attempt to avoid forfeiture of his claim, Spurlock asserts fundamental error. The fundamental error doctrine is extremely narrow and applies only when the error amounts to a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process. *Lehman v. State*, 926 N.E.2d 35, 38 (Ind. Ct. App. 2010), *trans. denied*. Thus, this doctrine is available only in egregious circumstances. *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010).

[11] Spurlock's claim concerns the second of his two conspiracy convictions, which upon remand was entered as a Class B felony. At the time Spurlock committed these crimes in 1999, Indiana Code section 35-50-2-5 (1977)[4] provided:

> A person who commits a Class B felony shall be imprisoned for a fixed term of ten (10) years, with not more than ten (10) years added for aggravating circumstances or not more than four (4) years subtracted for mitigating circumstances. In addition, he may be fined not more than ten thousand dollars ($10,000).

---

[4] Although a major revision to our sentencing statutes took effect on April 25, 2005, replacing the presumptive sentencing scheme with an advisory sentencing scheme, here we apply the presumptive sentencing scheme that was in effect at the time Spurlock committed these crimes in 1999. *See Gutermuth v. State*, 868 N.E.2d 427, 431 n.4 (Ind. 2007) (explaining that 2005 revisions to sentencing statutes did not alter long-standing rule that sentencing statute in effect at time crime is committed governs sentence for crime).

[12] At the resentencing hearing, the trial court sentenced Spurlock to an enhanced term of twenty years on the second conspiracy conviction involving the robbery and murders of Boone and Johnson on November 12. As applied to Indiana's presumptive sentencing scheme under which Spurlock was sentenced, *Blakely* prohibits the reliance on facts not found by a jury or admitted by the defendant to enhance a sentence above the presumptive, with the exception of criminal history. 124 S. Ct. at 2536. Accordingly, upon resentencing, the trial court could not enhance Spurlock's sentence based on additional facts unless those facts are either (1) a prior conviction, (2) facts found by a jury beyond a reasonable doubt, (3) facts admitted by Spurlock, or (4) facts found by the sentencing judge after Spurlock waived his *Blakely* rights and consented to judicial factfinding. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007).

[13] At Spurlock's resentencing, the trial court stated, "That 20 years is aggravated based, as [original sentencing judge] indicated, going in a second time and I think that justifies an aggravated sentence." Resent'g Tr. pp. 41-42. The trial court was referring to these comments of the trial judge at Spurlock's original sentencing hearing:

> Count VII, conspiracy to commit robbery, this is the robbery of Benjamin Boone and Doris Johnson that was committed seven days after the robbery and murders of Crystal Davenport and Michael Haddix – the Court is going to find that the aggravators and mitigators weigh on that because the Court is going to add the aggravating circumstance that you knew what had happened during the first robbery and you went back for a second robbery – you conspired with these people in this second robbery so the Court's going to give you 30 years on Count VII.

****

Again, Mr. Spurlock, the evidence in this case is that you were addicted to heroin – you and your drug buddies, your fellow heroin addicts did the first robbery, and during the course of that robbery – even if you didn't know that your friends were horrible murderers, but after your friends killed Crystal Davenport and Michael Haddix on November the 3rd, you went back with them on November the 8th [sic] to do another robbery of another set of drug dealers, and the fact that even – even though you weren't the trigger man, you knew what they had done, you knew what they were capable of, you knew what had happened in the first robbery – in your statement to the police officer, your own words, you were – you may have been afraid to tell but you had no business going with them the second time, but you did, and you are responsible.

Sent'g Tr. pp. 34, 35.

[14] The fact that Spurlock participated in the second drug-related robbery/murders with full knowledge of what had occurred during the first drug-related robbery/murders is a *Blakely* permissible reason for enhancing his sentence because it is based on facts found by a jury beyond a reasonable doubt. The information as well as the jury instructions charged that Spurlock participated in the first robbery/murders on or about November 3, 1999 and the second robbery/murders on or about November 12, 1999. *See* Appellant's Appendix Direct Appeal Vol. 1, pp. 38-42, 174-188. In support of these charges, at trial the State presented Spurlock's statements to police, which were admitted into evidence. In his statements, Spurlock acknowledged that he went with Swann and Banks to the Haddix/Davenport residence and saw Swann shoot Davenport in the head. Direct Appeal Exhibits Vol. 1, pp. 162, 165. Further,

the State presented the testimony of one of the responding police officers that he found two bodies in a residence on North Oxford Street (i.e., the Haddix/Davenport residence) on November 3, 1999. Direct Appeal Tr. Vol. 1, pp. 59, 60, 64.

[15] In his statements to police, Spurlock also discussed going to the Boone/Johnson residence with Swann and Banks. Direct Appeal Exhibits Vol. 1, pp. 128-29. In addition, Aurelia Mason, the next-door-neighbor of Boone and Johnson, testified that she heard gunshots on November 12, 1999 at approximately 1:19 a.m. Direct Appeal Tr. Vol. 1, pp. 94-97. Finally, Ronald Freeman, a friend of Boone's testified that he was at the Boone/Johnson residence from approximately 7:30 p.m. on November 11, 1999 to approximately 1:00 a.m. on November 12, 199 getting high with Boone and Johnson on crack cocaine and heroin. *Id.* at 123. He explained that two men came to the front door and were admitted into the residence by Boone and that soon thereafter he left. As he was walking away from the house, he heard gun shots and saw a flash in the window. *Id.* at 128-29.

[16] The fact that Spurlock participated in the second robbery/murders after he participated in the first robbery/murders is implicit in his convictions on all charges. All the evidence at trial showed that the first robbery/murders occurred on or about November 3—with Spurlock present—before the second robbery/murders occurred on or about November 12, at which Spurlock was also present. Therefore, implicit in the jury's verdicts is the finding beyond a reasonable doubt that Spurlock embarked on the second effort to rob drug

dealers with full knowledge that the first robbery had resulted in murder of the victims. Hence, this fact could properly be relied on to enhance his sentence. *Cf. Ryle v. State*, 842 N.E.2d 320, 323-25 (Ind. 2005) (holding that trial court could properly enhance sentence without violating *Blakely* based on fact that defendant was on probation at time of current offense if finding rested on prior judicial records as reflected in presentence investigation report prepared by probation officer).

# Conclusion

[17] In light of these circumstances, we conclude that Spurlock has not met his burden of showing that the enhancement of his sentence based upon facts implicit in his convictions resulted in error that denied him fundamental due process. Accordingly, we find no fundamental error.

[18] Affirmed.

Mathias, J., and Pyle, J., concur.