## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 29 2020, 11:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. O'Connor
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Jesse R. Drum
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Donald Thomas,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | April 29, 2020<br><br>Court of Appeals Case No.<br>19A-CR-2159<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Lisa F. Borges, Judge<br><br>Trial Court Cause No.<br>49G04-1801-FA-1615 |

**Tavitas, Judge.**

## Case Summary

[1] Donald Thomas appeals his sentence after his conviction for rape, a Class A felony, and criminal deviate conduct, a Class A felony. We affirm.

## Issue

[2] Thomas raises one issue for our review, which we restate as whether Thomas' sentence violates his Sixth Amendment rights.

## Facts

[3] On September 2, 1998, A.A. lived on the second floor of an apartment complex in Marion County. Earlier in the day, while retrieving a belonging from her vehicle, A.A. noticed a man she did not know, later identified as Thomas, walking in the street of the apartment complex. A.A. returned to her apartment and, shortly thereafter, Thomas knocked on her apartment door.

[4] Thomas asked if he could use A.A.'s telephone to call work. A.A. allowed Thomas to use the telephone outside of her apartment. After Thomas was done using the telephone, he told A.A. that he needed to call his work again in fifteen minutes. Fifteen minutes later, Thomas returned, and A.A. allowed him to use the telephone again. While Thomas was using the telephone, A.A. began cleaning dishes inside her apartment. Suddenly, Thomas was standing next to A.A., pointing a gun at A.A.'s head.

[5] Thomas then raped A.A. and forced A.A. to perform oral sex on him while he pointed a gun at A.A.'s back. Thomas placed a pillow over A.A.'s face and

began to suffocate her. A.A. fought back, and Thomas stopped. While still in A.A.'s apartment, Thomas used a bathroom towel. Thomas left a few moments later and told A.A. to wait fifteen minutes before calling police.

[6] When Thomas left, A.A. realized her phone had no dial tone. A.A. jumped off her second story balcony and found a woman in the street of the apartment complex who called law enforcement.

[7] Officers from the Marion County Sheriff's Office, now the Indianapolis Metropolitan Police Department ("IMPD"),[1] were dispatched to A.A.'s home. The officers collected items from A.A.'s apartment, including the towel Thomas used in the bathroom. A rape kit was performed on A.A. at the hospital. No suspects were identified at that time, and the case was dormant until 2016.

[8] In October 2016, Detective Michelle Floyd, with IMPD, was assigned to investigate a "cold case"—the assault at A.A.'s apartment. Detective Floyd contacted A.A. and requested A.A. to identify the perpetrator of the 1998 assault by way of a photo array containing Thomas' photograph. Detective Floyd also obtained Thomas' DNA from the bathroom towel that was collected and retained by IMPD, as evidence in the case. DNA testing was conducted on a sample taken from the towel and a sample taken from Thomas pursuant to a November 15, 2016 court order. The result of the DNA test revealed seminal

---

[1] According to Detective Michelle Floyd, the police departments merged in 2007.

material on the towel, which matched the DNA profile of Thomas, "estimated to occur once in more than 330 billion unrelated individuals." Tr. Vol. III p. 14.

[9] On January 16, 2018, the State charged Thomas with Count I, rape, a Class A felony; and Count II, criminal deviate conduct, a Class A felony. A jury trial was held in July 2019, and witnesses testified to the foregoing facts. The jury found Thomas guilty of both counts.

[10] On August 23, 2019, the trial court held Thomas' sentencing hearing. The trial court found as aggravating factors: (1) the harm, injury, loss, or damage suffered by the victim was greater than necessary; (2) Thomas' criminal history;[2] and (3) Thomas' probation violations. The trial court found as mitigating factors: (1) Thomas' criminal history appears to end in 2009; and (2) Thomas was his elderly mother's caretaker.[3]

[11] In its oral sentencing statement, the trial court identified the "most serious aggravator" as the nature of the offense and the impact that the offense had on

---

[2] Thomas' criminal history includes convictions for: battery resulting in bodily injury, a Class A misdemeanor, and a subsequent probation revocation in 1991; criminal confinement, a Class D felony, and a subsequent probation revocation in 1992; residential entry, a Class D felony in 1996; public intoxication, a Class B misdemeanor in 1997; operating a vehicle with an alcohol concentration equivalent to at least .08, a Class C misdemeanor in 2003 and subsequent probation revocation; operating a vehicle while intoxicated endangering a person, a Class D felony, possession of a controlled substance, a Class D felony, and a subsequent probation revocation in 2004; and possession of cocaine, a Class D felony in 2006. Thomas' pre-sentence investigation report also lists a charge for "possession" in Baltimore County, Maryland, in 1994. No other information regarding this charge was provided.

[3] The trial court entered a written supplemental sentencing statement on August 23, 2019, where these factors were identified.

A.A. *Id.* at 67. At the end of the trial court's oral sentencing statement, the trial court asked if "there [was] any legal defect in [the trial court's] sentence or anything that [the trial court has] forgotten?" *Id.* at 71. Thomas' counsel responded: "Not on behalf of the Defendant, Your Honor." *Id.*

[12] The trial court sentenced Thomas to thirty-five years on each count to run consecutively for an aggregate sentence of seventy years. Thomas now appeals his sentence.

## Analysis

[13] Thomas argues the trial court violated his Sixth Amendment rights by failing to apply the sentencing scheme in effect at the time of the offense in 1998. Our Supreme Court held that we must apply the sentencing scheme in effect at the time of the defendant's offense. *See Robertson v. State*, 871 N.E.2d 280, 286 (Ind. 2007) ("Although Robertson was sentenced after the amendments to Indiana's sentencing scheme, his offense occurred before the amendments were effective so the pre-*Blakely* sentencing scheme applies to Robertson's sentence.").

[14] At the time of this offense, in 1998, the presumptive sentencing scheme was in effect instead of the current advisory sentencing scheme. Indiana's presumptive sentencing system, however, was found to "run[] afoul of the Sixth Amendment" pursuant to *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004), "because it mandates both a fixed term and permits judicial discretion in finding aggravating or mitigating circumstances to deviate from the fixed term." *Smylie v. State*, 823 N.E.2d 679, 685 (Ind. 2005). Under *Blakely,* therefore*:*

a trial court may not enhance a sentence based on additional facts, unless those facts are either (1) a prior conviction; (2) *facts found by a jury beyond a reasonable doubt*; (3) facts admitted by the defendant; or (4) facts found by the sentencing judge after the defendant has waived *Apprendi* [*v. New Jersey,* 530 U.S. 466, 490 (2000)] rights and consented to judicial fact[-]finding.

*Robertson*, 871 N.E.2d at 286 (emphasis added).

[15] In 2005, our Supreme Court held:

> First, as a new rule of constitutional procedure, we will apply *Blakely* retroactively to all cases on direct review at the time *Blakely* was announced. Second, a defendant need not have objected at trial in order to raise a *Blakely* claim on appeal inasmuch as not raising a *Blakely* claim before its issuance would fall within the range of effective lawyering. Third, those defendants who did not appeal their sentence at all will have forfeited any *Blakely* claim.

*Smylie,* 823 N.E.2d at 690-91.[4]

[16] Subsequently, Indiana amended its sentencing scheme to the advisory sentencing scheme "apparently. . . to resolve the Sixth Amendment problem *Blakely* presented." *Anglemyer v. State,* 868 N.E.2d 482, 489 (Ind. 2007). The new sentencing scheme still required trial courts to enter sentencing statements

---

[4] In *Kincaid v. State,* 837 N.E.2d 1008 (Ind. 2005), our Supreme Court again allowed a defendant to raise a *Blakely* claim for the first time on appeal when the sentencing hearing occurred two weeks after *Blakely* was issued. *See Kincaid,* 837 N.E.2d at 1010. Thus, our Supreme Court ordered our Court to review Kincaid's *Blakely* claim on the merits.

which identified the aggravating and mitigating factors that led to imposition of a particular sentence. *See id.* at 490.

[17] Turning to the present case, at the time of Thomas' crime, in 1998, the prior sentencing scheme was in effect and, therefore, applied to Thomas. Under the prior sentencing scheme, the sentence for a Class A felony was a fixed term of thirty years, with not more than twenty years added for aggravating circumstances or not more than ten years subtracted for mitigating circumstances. Ind. Code § 35-50-2-4 (1995). The trial court sentenced Thomas to thirty-five years for each Class A felony, to run consecutively for an aggregate sentence of seventy years.

[18] Thomas argues that he was entitled to have a jury determine whether the additional facts surrounding the nature of the offense and impact on the victim should have constituted an aggravating factor pursuant to *Blakely's* application to the prior sentencing scheme. The State responds that Thomas waived this argument because Thomas did not object at the time of sentencing, even when invited by the trial court to do so. We agree with the State that Thomas has waived this argument. Although cases such as *Smylie* and *Kincaid* have allowed defendants to raise the *Blakely* issue for the first time on direct appeal, Thomas, unlike the defendants in those cases, was sentenced many years after *Blakely* was handed down, and these exceptions do not apply.

[19] Thomas' sentencing hearing occurred approximately fifteen years after *Blakely*. If Thomas wanted the jury to determine these aggravating factors, he should

have objected at sentencing. At the very least, Thomas should have objected when the trial court invited the objection. To allow Thomas to do otherwise would allow Thomas to sit by, wait to see what sentence he receives from the trial court, and then claim error on appeal if he is not in favor of the sentence he received. *See Robles v. State,* 705 N.E.2d 183, 187 (Ind. Ct. App. 1998) ("[A] party may not sit idly by, permit the court to act in a claimed erroneous manner, and then attempt to take advantage of the alleged error at a later time.") (citations omitted). Accordingly, Thomas' sole argument on appeal is waived.[5] *See Muncy v. State,* 834 N.E.2d 215, (Ind. Ct. App. 2005) ("Muncy did not object on Sixth Amendment grounds during his sentencing hearing and thereby 'forfeited [his] ability to appeal [his] sentence on *Blakely* grounds.'") (quoting *Smylie,* 823 N.E.2d at 689).

## Conclusion

Thomas waived his argument by failing to object at his sentencing hearing, especially when the trial court specifically invited the objection. Accordingly, we affirm.

Affirmed.

Riley, J., and Mathias, J., concur.

---

[5] We, therefore, need not address Thomas' argument that the trial court sentenced him improperly to consecutive sentences because his argument rests on a finding that one of the aggravators was improper under *Blakely.*