Argued and submitted April 28; resubmitted en banc October 19,
affirmed December 20, 2006

## STATE OF OREGON,
*Respondent,*

*v.*

## WILLIE LARON TANNER,
*Appellant.*

## 9902-31447; A128680

150 P3d 31

Louis R. Miles, Deputy Public Defender, argued the cause for appellant. With him on the brief were Peter A. Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Doug M. Petrina, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Brewer, Chief Judge, and Edmonds, Landau, Haselton, Armstrong, Linder, Wollheim, Schuman, Ortega, and Rosenblum, Judges.

ARMSTRONG, J.

Haselton, J., dissenting.

## ARMSTRONG, J.

Defendant, who was convicted following a jury trial of various crimes, appeals, challenging the trial court's authority to impose consecutive sentences for several of those convictions. The trial court imposed various presumptive-sentencing-guidelines sentences and ORS 137.700 mandatory minimum sentences, and determined that certain sentences should be served consecutively. Defendant argued to the trial court and reiterates on appeal that, under the reasoning of *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), the court's imposition of consecutive sentences pursuant to ORS 137.123(5) violated his right to a jury trial under the Sixth Amendment to the United States Constitution because (1) in the circumstances presented here, ORS 137.123(4) presumptively required the imposition of concurrent, not consecutive, sentences; and (2) the trial court imposed consecutive sentences based on facts found by the court by a preponderance of the evidence rather than by a jury beyond a reasonable doubt. We are thus squarely faced with the same issue that we expressly reserved in *State v. Herrera-Lopez*, 204 Or App 188, 193, 129 P3d 238, *rev den*, 341 Or 140 (2006).[1] We conclude that the trial court's imposition of consecutive sentences did not violate the Sixth Amendment. We therefore affirm.

The facts material to our review are undisputed. Defendant was convicted following a jury trial of first-degree robbery with a firearm, ORS 164.415, first-degree rape, ORS 163.375, first-degree unlawful sexual penetration, ORS 163.411, first-degree kidnapping, ORS 163.235, and first-degree burglary, ORS 164.225, all arising out of a continuous and uninterrupted course of conduct directed against the victim, T, on January 31, 1999. In the same jury trial, defendant was also convicted of another count of first-degree robbery with a firearm and second-degree kidnapping, ORS 163.225, which arose out of the same continuous and uninterrupted

---

[1] In a number of other cases, we have declined to review the same question because of lack of preservation. *See, e.g., State v. Taylor*, 198 Or App 460, 108 P3d 682, *rev den*, 339 Or 66 (2005); *State v. Fuerte-Coria*, 196 Or App 170, 100 P3d 773 (2004), *rev den*, 338 Or 16 (2005).

course of conduct directed against a different victim, S, on January 31, 1999.[2] Defendant appealed those convictions and, in *State v. Tanner*, 190 Or App 299, 78 P3d 132 (2003), *modified on recons*, 192 Or App 670, 87 P3d 688, *rev den*, 337 Or 160 (2004) (*Tanner I*), we affirmed defendant's convictions but remanded for resentencing. On remand in *Tanner I*, and over defendant's objections, the court imposed either presumptive sentences under the sentencing guidelines or Measure 11 mandatory minimum sentences under ORS 137.700 and directed that those sentences be served consecutively to others.

Defendant objected that the imposition of consecutive sentences pursuant to ORS 137.123(5)(a) was unconstitutional under the rationale announced in *Blakely* and *Apprendi*:

"I view ORS 137.123(5)(a) * * * as requiring factual findings. The law presumes concurrent sentences in Oregon. And without additional factual findings by a judge, it is the defense's position that [defendant] only could be given concurrent sentences with the primary offense."

The court rejected defendant's contention that the imposition of consecutive sentences pursuant to ORS 137.123(5)(a) required additional findings of fact by the court. Rather, the court concluded that the determination necessary to support the imposition of consecutive sentences was "a legal conclusion." Proceeding from that premise, the court imposed consecutive sentences totaling 616 months' imprisonment.

On appeal, defendant reiterates his contention that the imposition of consecutive sentences pursuant to ORS 137.123(5)(a) was unconstitutional under *Apprendi* and *Blakely*. ORS 137.123 provides, in pertinent part:

"(1)   A sentence imposed by the court may be made concurrent or consecutive to any other sentence which has been previously imposed or is simultaneously imposed upon the same defendant. The court may provide for consecutive sentences only in accordance with the provisions of

---

[2] In addition, defendant was convicted of four counts of second-degree robbery, ORS 164.405, one count of felon in possession of a firearm, ORS 166.270, and two counts of solicitation, ORS 161.435. Defendant does not challenge those convictions and the sentences imposed on those convictions on appeal.

this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences.

"(2)   If a defendant is simultaneously sentenced for criminal offenses that do not arise from the same continuous and uninterrupted course of conduct, or if the defendant previously was sentenced by any other court within the United States to a sentence which the defendant has not yet completed, the court may impose a sentence concurrent with or consecutive to the other sentence or sentences.

"* * * * *

"(4)   When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be concurrent unless the court complies with the procedures set forth in subsection (5) of this section.

"(5)   The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct only if the court finds:

"(a)   That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense[.]"

■      At the outset, we respectfully disagree with the trial court's determination that ORS 137.123(5)(a) calls for "legal conclusions" rather than "factual findings." ORS 137.123(5)(a) requires a court to "find" that the commission of one offense was not "merely incidental" to another but, instead, was "an indication of defendant's willingness to commit more than one criminal offense." A determination as to a defendant's willingness to commit more than one criminal offense is innately factual, requiring an assessment of the defendant's state of mind. *Cf. Apprendi*, 530 US at 492-93 (factfinding concerning a defendant's state of mind at the time of the crime "is perhaps as close as one might hope to come to a core criminal offense 'element' ").[3]

---

[3] We also reject the state's alternative argument that, even if the determination required to impose consecutive sentences under ORS 137.123(5)(a) is a factual

■    Thus, we agree with defendant that, under ORS 137.123(5)(a), in order to impose consecutive sentences for crimes arising out of a continuous and uninterrupted course of conduct, a court must make factual findings. Judicial fact-finding at sentencing may, in some circumstances, run afoul of the Sixth Amendment, as set forth by the Court in *Apprendi* and later *Blakely*. The black-letter rule of law from *Apprendi* that is at issue here is the following: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 US at 490. Defendant maintains that the "prescribed statutory maximum" for a series of crimes that arise from a continuous and uninterrupted course of conduct equals the greatest sentence he could receive for any one of the crimes, because certain other crimes must be sentenced concurrently in the absence of judicial factfinding required by ORS 137.123(5)(a). The state suggests that the rule from *Apprendi* applies to "the penalty for *a* crime," 530 US at 490 (emphasis added), singular, and that the rule has no

---

finding, the requisite facts were necessarily found by the jury in returning its verdict, obviating any Sixth Amendment concern. *Cf. Blakely,* 542 US at 303 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*" (Emphasis in original.)). In particular, the state reasons that, because the jury found defendant guilty of multiple offenses, it necessarily found that defendant had demonstrated his "willingness to commit" multiple offenses as that term is used in ORS 137.123(5)(a). Thus, the state asserts, the consecutive sentences were, in fact, based on the jury's verdict and not on some "extramural" judicial factfinding.

We disagree. The logical upshot of the state's argument is that the legislature intended a court to be able to impose consecutive sentences *any time* the jury found that a defendant had committed multiple offenses. The text of ORS 137.123 as a whole does not bear such an interpretation. The statute places no restrictions on the court's ability to impose consecutive sentences when criminal offenses "do not arise from the same continuous and uninterrupted course of conduct," ORS 137.123(2), but specifically provides that when offenses do arise out of a continuous and uninterrupted course of conduct, the sentences *"shall"* be concurrent," ORS 137.123(4), unless "the *court* finds" the facts described in ORS 137.123(5). (Emphasis added.) If the legislature believed that a jury's finding that defendant had committed multiple offenses necessarily demonstrated the requisite "willingness to commit more than one criminal offense" as that phrase is used in ORS 137.123(5)(a), there would be no reason for ORS 137.123(4) and (5)(a) to exist. That is, there would be no need for the court to "find" anything—the imposition of consecutive sentences would be automatic, and the finding requirement would be nugatory. We will not presume that the legislature imposed a useless condition. *See generally* ORS 174.010.

application to determining the relationship between sentences when a defendant is being sentenced for multiple crimes.

■     As explained below, in states having statutes similar to ORS 137.123(5), the vast majority of courts that have considered this question in the wake of *Apprendi* and *Blakely* have reached the conclusion that judicial factfinding in support of consecutive sentences does not violate the Sixth Amendment. As explained below, we agree with that proposition. *Apprendi* and *Blakely* concern what facts must be found by a jury in order to impose a specific sentence for a specific offense. They say nothing about when sentences for separate offenses should begin to run. The Court's decisions in *Apprendi* and *Blakely* make clear its concern that sentencing courts should not usurp factfinding functions that traditionally have been left to juries. Defendant offers no support—and we are aware of none—for the proposition that determining when sentences should run on multiple convictions, that is, the relationship between sentences, has ever been a part of a jury's traditional function.

The Oregon Supreme Court recently summarized the pre-*Apprendi* law concerning when Sixth Amendment jury trial rights attach:

"[Before *Apprendi* was decided], the Court twice had considered and rejected the argument that a sentencing factor constituted an 'element' of the crime, which a jury had to find beyond a reasonable doubt. *See Almendarez-Torres v. United States*, 523 US 224, 118 S Ct 1219, 140 L Ed 2d 350 (1998); *McMillan v. Pennsylvania*, 477 US 79, 106 S Ct 2411, 91 L Ed 2d 67 (1986) (illustrating proposition). The statute at issue in *McMillan* authorized a trial court to impose a mandatory minimum sentence if it found by a preponderance of the evidence that the defendant 'visibly possessed a firearm' while committing certain underlying crimes. 477 US at 81. The statute explicitly stated that visible possession of a firearm was not an element of the underlying crime. *Id.* at 83.

"Reaffirming its decision in *Patterson v. New York*, 432 US 197, 97 S Ct 2319, 53 L Ed 2d 281 (1977), the *McMillan* Court reasoned that, '[w]hile there are obviously constitutional limits beyond which the States may not go in this

regard, the applicability of the reasonable doubt standard * * * has always been dependent on how a State defines the offense that is charged in any given case[.]' 477 US at 85 (internal quotation marks omitted). Under the terms of the statute, 'visible possession' was not an element of the crime, which the state had to prove to a jury beyond a reasonable doubt, and the Court rejected the petitioners' arguments that the Sixth Amendment and the Due Process Clause required a different conclusion. *Id.* at 86-91.

"In the course of rejecting the petitioners' argument, the Court observed that their argument 'would have at least more superficial appeal if a finding of visible possession exposed them to greater or additional punishment' rather than a mandatory minimum sentence. *Id.* at 88. * * *

"In *Almendarez-Torres*, a federal statute authorized sentencing courts to impose two-year sentences on deported aliens who returned illegally to the United States; it also authorized an enhanced sentence of up to 20 years if the court found by a preponderance of the evidence that the returning alien had a prior felony conviction. *See* 523 US at 226 (describing federal statute). Having received an enhanced sentence under that statute, the petitioner in *Almendarez-Torres* argued that, because a prior conviction authorized imposition of a sentence in excess of the statutory maximum rather than a mandatory minimum sentence, the fact of a prior conviction was an 'element' of the offense that the government had to prove to a jury beyond a reasonable doubt.

"The Court rejected the petitioner's argument. *Id.* at 245. It reasoned that whether a sentencing factor triggers an increased maximum sentence or a mandatory-minimum sentence, which the Court had held constitutional in *McMillan*, is not dispositive because 'the risk of unfairness to a particular defendant is no less, and may well be greater, when a mandatory minimum sentence, rather than a permissive maximum sentence, is at issue.' *Id.* Thus, the Court declined to 'adopt a rule that any significant increase in a statutory maximum sentence would trigger a constitutional "elements" requirement[,]' reasoning that 'such a rule would seem anomalous in light of existing case law[.]' *Id.* at 247.

"Although later cases have recast *Almendarez-Torres* as establishing only a 'prior conviction' exception to the rule in

*Apprendi*, the decision in *Almendarez-Torres*, read on its own terms, stands for a far broader proposition: The Court held in *Almendarez-Torres* that, as a general rule, sentencing factors that enhance the statutory maximum sentence do not constitute elements of an offense that the state must prove to a jury beyond a reasonable doubt. Indeed, the dissent in *Almendarez-Torres* invited the majority to apply the constitutional rule that the Court later announced in *Apprendi*—an invitation that the Court declined. *See* 523 US at 251 (Scalia, J., dissenting) (urging rule later adopted in *Apprendi*)."

*Miller v. Lampert*, 340 Or 1, 14-16, 125 P3d 1260 (2006) (footnotes omitted) (some brackets in original).

*Apprendi* brought about a major change in the law. In *Apprendi*, the defendant pleaded guilty to two second-degree firearm possession charges and one charge of third-degree unlawful possession of a bomb. Based on a judicial finding that the defendant committed the crime because of racial bias, the court imposed an enhanced sentence of 12 years for one of the firearms offenses, which otherwise would have carried a maximum sentence of 10 years. The question at issue in that case was whether the defendant "had a constitutional right to have a jury find such bias on the basis of proof beyond a reasonable doubt." *Apprendi*, 530 US at 475-76. The Court's description of the facts and its analytical approach shed some light on the issue at hand:

"Because the plea agreement provided that the sentence on the sole third-degree offense (count 22) would run concurrently with the other sentences, the potential sentences on the two second-degree counts were critical. If the judge found no basis for the biased purpose enhancement, the maximum consecutive sentences on those counts would amount to 20 years in aggregate; if, however, the judge enhanced the sentence on count 18, the maximum on that count alone would be 20 years and the maximum for the two counts in aggregate would be 30 years[.] * * *

"* * * * *

"It is appropriate to begin by explaining why certain aspects of the case are *not relevant* to the narrow issue that we must resolve. First, the State has argued that even without the trial judge's finding of racial bias, the judge could

have imposed consecutive sentences on counts 3 and 18 that would have produced the 12-year term of imprisonment that Apprendi received; Apprendi's actual sentence was thus within the range authorized by statute for the three offenses to which he pleaded guilty. * * * *The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. * * * The sentences on counts 3 and 22 have no more relevance to our disposition than the dismissal of the remaining 18 counts."*

*Id.* at 470, 474 (emphasis added). Thus, the Court in *Apprendi* specifically declined an invitation to analyze the constitutional issue in terms of whether the aggregated sentences, as a whole, exceeded the statutory maximum for the group of offenses. Although *Apprendi* certainly does not answer the question whether there are potential constitutional problems with judicial factfinding in imposing consecutive sentences, it explicitly provided a framework only for determining whether the sentence for an individual count was constitutionally impermissible: "Other than the fact of a prior conviction, any fact that increases the penalty for *a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490 (emphasis added).

None of the Court's cases that have followed and elaborated on *Apprendi* contains any discussion that is relevant to the question at hand here—whether or how the rule applies to limit the aggregate sum of sentences for multiple crimes when the sentence for each individual crime does not exceed the statutory maximum.[4] In *Harris v. United States*, 536 US 545, 122 S Ct 2406, 153 L Ed 2d 524 (2002), the Court considered whether the rule from *Apprendi* was implicated in

---

[4] Although the Court has decided no cases that raise this issue, we note that the Court currently has under advisement the case of *Burton v. Stewart*, No. 05-9222, a habeas corpus case out of the Ninth Circuit. *Burton v. Waddington*, 142 Fed Appx 297 (9th Cir 2005). Although the questions presented to the Court in that case concern the retroactivity of the rule of law from *Blakely*, it appears that the respondent raised, in the first instance in the Supreme Court, a question whether *Blakely* applied to the sentences at issue, which apparently were challenged only on the basis that they were ordered to run consecutively based on judicial factfinding.

a case in which the imposition of a mandatory minimum term of imprisonment was required if a judge found at sentencing that a firearm had been "brandished" during the commission of the offense. The Court concluded that it was not:

> "*Apprendi* said that any fact extending the defendant's sentence beyond the maximum authorized by the jury's verdict would have been considered an element of an aggravated crime—and thus the domain of the jury—by those who framed the Bill of Rights. The same cannot be said of a fact increasing the mandatory minimum (but not extending the sentence beyond the statutory maximum), for the jury's verdict has authorized the judge to impose the minimum with or without the finding."

536 US at 557. Thus, the Court made clear that not all judicial factfinding at sentencing presents constitutional problems. The Court did, however, go on to find a constitutional flaw in a sentencing scheme that required judicial factfinding of the aggravating circumstances necessary for imposition of the death penalty, *Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002), and found similar constitutional flaws in other sentencing schemes that required judicial factfinding of aggravating circumstances necessary to impose upward durational departure sentences, *see Blakely*, 542 US at 303-04; *United States v. Booker*, 543 US 220, 125 S Ct 738, 160 L Ed 2d 621 (2005). None of those cases contains any suggestion that the *Apprendi* analysis must be applied to a challenge concerning the length of aggregated sentences under circumstances where the sentence on each individual conviction does not exceed the statutory maximum sentence prescribed for each individual crime.

Thus, the issue before us is one of first impression, and the resolution of it is not dictated by prior decisions of the United States Supreme Court. Other courts throughout the nation, however, have grappled with the issue in the wake of the *Apprendi* line of cases, reaching various results. Defendant relies on *State v. Foster*, 109 Oh St 3d 1, 845 NE2d 470, *cert den*, ____ US ____ , 127 S Ct 442 (2006), which involved a statute not unlike ORS 137.123 that places limitations on the

court's imposition of consecutive sentences.[5] The Ohio Supreme Court held that the judicial factfinding required under Ohio law for imposition of consecutive sentences ran afoul of the rule of law announced in *Apprendi*. The court stated:

"Ohio appears to be unique in having a rule that sentences of imprisonment shall be served concurrently. R.C. 2929.41(A) states, 'Except as provided in [specific sections including R.C. 2929.14(E)], a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term.' Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms, judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) * * * require[s] trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal.

"Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge. In *State v. Lett*, 161 Ohio App 3d 274, 829 NE 2d 1281 [2005], an en banc decision, the Eighth Appellate District found *Blakely* is inapplicable to consecutive sentencing because 'the facts found by the court do not increase the maximum penalty for an individual offense.' This is true; nevertheless, because the total punishment increases through consecutive sentences only after judicial findings beyond those

---

[5] Ohio Revised Code (R.C.) § 2929.14(E)(4) provides, in part:

"If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

"* * * * *

"(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."

determined by a jury or stipulated by a defendant, R.C. 2929.14(E)(4) violates principles announced in *Blakely*."

109 Oh St 3d at 21-22, 845 NE2d at 490-91 (citations, footnotes, and emphasis omitted).[6]

By contrast, the Washington Supreme Court took a narrower view of the rule of law announced in *Apprendi*: "*Apprendi* does not have any application to consecutive sentences; to conclude otherwise would extend *Apprendi*'s holding beyond the narrow grounds upon which it rested." *State v. Cubias*, 155 Wash 2d 549, 553, 120 P3d 929, 931 (2005). Washington, like Ohio, has a sentencing scheme for consecutive sentences that requires judicial factfinding under certain circumstances. Under the Washington scheme, generally, sentences for multiple "current offenses" are to be served concurrently, Revised Code of Washington (RCW) § 9.94A.589(1)(a), but if "a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct," then the sentences for those offenses "shall be served consecutively to each other." RCW § 9.94A.589(1)(b). In *Cubias*, the question presented was whether judicial factfinding that the defendant's offenses arose from "separate and distinct criminal conduct" was permissible under *Apprendi*. In rejecting the argument that

---

[6] We disagree with the Ohio court's conclusion that its sentencing scheme was unique in that regard. Although it is true that a number of courts that have upheld consecutive sentences against *Apprendi* challenges have done so on the ground that the statutory schemes did not require judicial factfinding, *see, e.g., United States v. Davis*, 329 F3d 1250 (11th Cir), *cert den*, 124 S Ct 330 (2003) (consecutive sentence was discretionary under federal guidelines); *State v. Bramlett*, 273 Kan 67, 41 P3d 796 (2002) (consecutive sentence was discretionary under state statute), a number of other jurisdictions have statutes governing consecutive sentencing that bear some resemblance to those at issue here (as well as in *Cubias* and *Wagener*, discussed in the text that follows). *See Smylie v. State*, 823 NE2d 679 (Ind), *cert den*, 126 S Ct 545 (2005) (judicial factfinding of aggravating factor required to impose consecutive sentence did not violate Sixth Amendment because the consecutive sentences did not exceed statutory maximums for the offenses); *People v. Murray*, 785 NYS2d 675, 5 Misc 3d 636 (NY Sup Ct 2004) (judicial finding that the defendant formed new intent in committing second crime did not violate *Apprendi* because "no single sentence exceeds the statutorily authorized maximum sentence"); *People v. Groves*, 107 Cal App 4th 1227, 132 Cal Rptr 2d 744 (2003) (judicial factfinding required for consecutive sentencing concerning whether the defendant had a reasonable opportunity to reflect on his actions after the first offense did not violate *Apprendi* because it did not increase the maximum possible sentence for any offense).

judicial factfinding of "separate and distinct criminal conduct" ran afoul of the Sixth Amendment right to jury trial, the Washington Supreme Court noted (as have we in the discussion above), that the Court in *Apprendi* specifically declined to analyze the question in terms of cumulative sentences, and in fact "deemed them irrelevant for purposes of its holding." *Cubias*, 155 Wash 2d at 553, 120 P3d at 931, citing *Apprendi*, 530 US at 474. The Washington court continued:

> "We are also satisfied that the *Blakely* decision does not preclude a sentencing court from imposing consecutive sentences in a case such as we have here. While it is true that the imposition of consecutive sentences increases a defendant's aggregate term of imprisonment, it is significant that in *Blakely*, like *Apprendi*, the court was not concerned with consecutive sentences. Indeed, the court considered the sentence on an additional count irrelevant. *Blakely*, 542 US at 299 n 2. It seems clear from *Blakely* that so long as the sentence for *any single offense* does not exceed the statutory maximum for that offense, as is the case here, *Blakely* is satisfied. Additionally, we note that consecutive sentences increase a defendant's total sentence because he or she was convicted of multiple serious violent offenses, not because the sentence exceeded the statutory maximum for any single offense."

*Cubias*, 155 Wash 2d at 554-55, 120 P3d 931-32 (footnote omitted).

The Illinois Supreme Court likewise found no constitutional flaw in a consecutive sentencing scheme that bears some resemblance to ours. In *People v. Wagener*, 196 Ill 2d 269, 752 NE2d 430, *cert den*, 534 US 1011 (2001), the court considered the constitutionality of a statute that allowed a court to impose a consecutive sentence after the court had found that such a sentence was "required to protect the public." *Id.* at 280, 752 NE2d at 439 (quoting 730 Illinois Compiled Statutes (ILCS) § 5/5-8-4(b)). The court first noted that "*Apprendi* explicitly disclaimed any holding regarding consecutive sentencing," 196 Ill 2d at 284, 752 NE2d at 441, pointing to the Court's explicit framing of the issue as " 'whether the 12-year sentence imposed on count 18 was permissible,' " *id.* (quoting *Apprendi*, 530 US at 474), and the

Court's rejection of the state's invitation to consider the constitutionality of the sentences in the aggregate. The Illinois Supreme Court thus concluded that "it is clear that the decisions [of lower Illinois courts] holding that consecutive sentencing triggers *Apprendi* concerns are extending that case beyond its facts." 196 Ill 2d at 285, 752 NE2d at 441. The court concluded:

> "We recognize that *Apprendi* contains isolated statements which on their face might appear to support the conclusion that the jury must find beyond a reasonable doubt each and every fact which might have any real-world impact on the length of time the defendant might spend in prison. For instance, the Court stated:
>
> > " 'If a defendant faces punishment beyond that provided by statute when an offense is committed under certain circumstances but not others, it is obvious that both the loss of liberty and the stigma attaching to the offense are heightened; it necessarily follows that the defendant should not—at the moment the State is put to proof of those circumstances—be deprived of protections that have, until that point, unquestionably attached.'
>
> "*Apprendi,* 530 US at 484. See also *Apprendi,* 530 US at 494 ('the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?').
>
> "However, these statements cannot be taken out of context. The issue in *Apprendi* was 'whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for *an offense* from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt.' (Emphasis added.) *Apprendi,* 530 US at 469. See also *Apprendi,* 530 US at 490 ('[o]ther than the fact of a prior conviction, any fact that increases the penalty for *a crime* beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt' (emphasis added)). The Court specifically stated that consecutive sentencing was 'not relevant' to the 'narrow issue' under consideration. *Apprendi,* 530 US at 474.

"We are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States. * * * But we are not bound to extend the decisions of the Court to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in order to find unconstitutional a law of this state."

196 Ill 2d at 286-87, 752 NE2d at 442-43 (some citations omitted).

In sum, a number of jurisdictions have grappled with the issue presented here and, while all have considered the implications that *Apprendi* and *Blakely* may have on judicial factfinding in support of consecutive sentences, all but one have declined to extend the rule of law from *Apprendi* and *Blakely* into this context, generally on the ground that the *Apprendi* Court itself appeared to indicate that the rule was inapplicable to multiple sentences.

We agree with the majority of courts that have considered this matter. First, and most importantly, we agree with the Illinois court that, while our court is bound to apply the constitution in the manner dictated by the Court, it is "not bound to extend the decisions of the Court to arenas which it did not purport to address." *Wagener*, 196 Ill 2d at 287, 752 NE2d at 442. We would, however, not hesitate to do so if we perceived the result to flow inevitably from the Court's announced decisions, despite the fact that the Court did not address the exact circumstance. Here, however, we do not perceive an extension of *Apprendi* and *Blakely* into the realm of consecutive sentencing to be inevitable.

The core concern identified by the Court in *Apprendi* was that a defendant is entitled to " 'a jury determination that [he] is guilty of every *element of the crime* with which he is charged, beyond a reasonable doubt.' " 530 US at 477 (quoting *United States v. Gaudin*, 515 US 506, 510, 115 S Ct 2310, 132 L Ed 2d 444 (1995) (emphasis added)). By making the length of a sentence for a specific crime dependent on judicial factfinding, the New Jersey statute at issue in *Apprendi* was considered "an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system." *Apprendi*, 530 US at 497. The "jury tradition," however,

has never included jury factfinding concerning the manner in which sentences for separate crimes should be served.[7] Moreover, the manner in which the facts of one crime might relate to the facts of another distinct crime have not, in the vast majority of situations, been considered "elements" of either crime.[8] And in fact, the United States Constitution does not require that separate crimes be tried at the same time and to the same jury. *See generally United States v. Dixon*, 509 US 688, 113 S Ct 2849, 125 L Ed 2d 556 (1993) (double jeopardy bars subsequent prosecution only if crimes have the "same elements"). In light of those considerations, it is difficult to see how judicial factfinding to determine when a defendant should begin to serve sentences for distinct crimes that happen to have been tried in the same proceeding constitutes an "unacceptable departure from the jury tradition." *Apprendi*, 530 US at 497.

We understand that it is *possible* that the United States Supreme Court might, based on the rationale set forth in *Apprendi* and *Blakely*, at some point conclude that the Sixth Amendment jury trial right extends to the finding of facts relating to whether sentences on separate crimes should be served concurrently or consecutively. That is, the Court could, in the future, choose to discern the "prescribed statutory maximum," *Apprendi*, 530 US at 490, as the total of the sentences that a defendant is required to serve for multiple crimes. Nonetheless, the Court has not done so, and it declined to consider that issue relevant in *Apprendi*.[9] And in

---

[7] At common law, courts had inherent authority to determine whether a defendant's sentence should be consecutive to or concurrent with other sentences. *See generally State v. Jones*, 250 Or 59, 440 P2d 371 (1968). However, as we recognized in *State v. Trice*, 146 Or App 15, 21, 933 P2d 345 (1997), the legislature abrogated the court's inherent authority in that respect with the enactment of ORS 137.123.

[8] For certain specific crimes, such as burglary, where the state must prove that the defendant intended to commit another crime, or felony murder, where the state must prove that a death occurred while the defendant was committing another crime, facts pertaining to multiple crimes must be found by a jury. However, in the normal course, courts guard carefully a defendant's right to prevent a jury from hearing facts concerning a defendant's other crimes, generally on the grounds of prejudice. *See, e.g.*, OEC 404 (recognizing constitutional limitations on the use of "other crimes" evidence in criminal cases); *McKinney v. Rees*, 993 F2d 1378 (9th Cir), *cert den*, 510 US 1020 (1993) (recognizing criminal defendant's due process right to exclusion of prejudicial evidence).

[9] Admittedly, the situation in *Apprendi* was essentially the obverse of what we have here: In that case, the state urged that, even if the individual sentences were

fact, in the only Sixth Amendment case that we are aware of that even comes close to addressing the question of "aggregating" multiple crimes for purposes of Sixth Amendment analysis, the Court rejected such an approach. In *Lewis v. United States*, 518 US 322, 116 S Ct 2163, 135 L Ed 2d 590 (1996), the defendant was tried for multiple offenses, each of which carried a maximum penalty of six months. The Court, in earlier cases, had established a presumption that an "offense carrying a maximum prison term of six months or less is presumed petty" and a defendant in such a case is not entitled under the Sixth Amendment to a jury trial. *Id.* at 326. In *Lewis*, the defendant argued that he was entitled to a jury trial because the aggregated prison terms authorized for the multiple offenses with which he was charged could exceed six months' imprisonment. *Id.* at 323. The Court concluded:

> "Certainly the aggregate potential penalty faced by petitioner is of serious importance to him. But to determine whether an offense is serious for Sixth Amendment purposes, we look to the legislature's judgment as evidenced by the maximum penalty authorized. Where the offenses charged are petty, and the deprivation of liberty exceeds six months only as a result of the aggregation of charges, the jury trial right does not apply."

*Id.* at 329. Although *Lewis* is not controlling here because it has to do with when jury rights attach at all and not with the scope of jury factfinding, it does provide at least some further indication that the Court is inclined to approach Sixth Amendment questions from an "offense-specific" point of view, and thus supports the idea that a jury function should not be altered based simply on whether the state tries a defendant for multiple offenses at the same time or at different times.

    In summary, although the Court might in the future extend the Sixth Amendment rule of law announced in *Apprendi* to factfinding relating to whether a defendant will

---

constitutionally suspect, the aggregate sentences were not; in this case, by contrast, defendant urges that even though the individual sentences pass constitutional muster under *Apprendi*, the aggregate sentences do not.

serve sentences consecutively, we are not presently persuaded that the Sixth Amendment requires such factfinding to be made by a jury.

Affirmed.

**HASELTON, J.,** dissenting.

Does Oregon's particular—indeed, somewhat peculiar—statutory scheme for imposition of consecutive sentences for crimes arising from a "continuous and uninterrupted course of conduct," ORS 137.123(4) and (5), require judicial factfinding that violates the constitutional principles announced in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), and *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004)?[1]

That question, although stark, is hardly easy. Almost nothing touching on *Apprendi* and *Blakely* and their implications is. We, like other state courts over the past five years, have been placed in a posture of "shadowboxing"—of divining what the Court meant and anticipating where it is going. To be sure, that dynamic is not unusual in the wake of the Court's most significant constitutional decisions, but it is especially acute here. Nevertheless, I must conclude that the core constitutional principles underlying *Apprendi* and *Blakely* preclude the imposition of consecutive sentences pursuant to ORS 137.123(4) and (5). Accordingly, I respectfully dissent.

My conclusion is compelled by the coincidence and convergence of two factors. *First*, although both *Apprendi* and *Blakely* arose as challenges to the enhancement of a sentence for a single offense, their holdings were not dependent on that circumstance. Rather, the Court's holding in each case rested on its unqualified condemnation of enhancement of a defendant's "punishment" based on facts other than those found by a jury:

---

[1] It is not disputed in this case that the convictions concern a "continuous and uninterrupted course of conduct" and thus ORS 137.123(4) and (5) are the applicable subsections.

"[A]ny fact [other than prior conviction] that increases the penalty for a crime beyond the *prescribed statutory maximum* must be submitted to a jury, and proved beyond a reasonable doubt."

*Apprendi*, 530 US at 490 (emphasis added).

"[T]he relevant inquiry is not one of form, but of effect— does the required finding expose the defendant to a *greater punishment than that authorized by the jury's guilty verdict*?"

*Id.* at 494 (emphasis added).

"Our precedents make clear * * * that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow*, the jury has not found all the facts 'which the law makes essential to the punishment,' and the judge exceeds his proper authority."

*Blakely*, 542 US at 303-04 (citations omitted; first emphasis in original; second emphasis added). *See also United States v. Booker*, 543 US 220, 125 S Ct 738, 160 L Ed 2d 621 (2005) (federal sentencing guidelines, which required judicial fact-finding to support imposition of greater sentences, violated Sixth Amendment); *Ring v. Arizona*, 536 US 584, 122 S Ct 2428, 153 L Ed 2d 556 (2002) (death penalty sentencing scheme that required judicial factfinding of aggravating circumstances violated Sixth Amendment); *Harris v. United States*, 536 US 545, 122 S Ct 2406, 153 L Ed 2d 524 (2002) (rule from *Apprendi* not implicated by the imposition of mandatory minimum sentences).

*Second*, under ORS 137.123, sentences for multiple crimes arising from a single "continuous and uninterrupted course of conduct" are *presumed* to be concurrent *unless* the court affirmatively "finds" certain facts. *See* ORS 137.123(1),

(4), (5).[2] That is, Oregon's consecutive sentencing statute, unlike the sentencing statutes in many other states, embodies a "concurrency default" for sentencing of multiple offenses arising out of a continuous and uninterrupted course of conduct. *See State v. Nail*, 304 Or 359, 366, 745 P2d 415 (1987) (interpreting prior similar statute and concluding that the statute "makes concurrent sentences the norm and consecutive sentences the exception. It permits consecutive sentences only if the court makes [specific] findings[.]").

The bottom line is that, under ORS 137.123(4) and (5), judicial factfinding is necessary to transform one or more statutorily presumed concurrent sentences into consecutive sentences. As a practical matter, such judicial factfinding can increase a defendant's actual incarceration, his *punishment*, for years. Indeed, here, defendant will spend 30 more years in prison because of the trial court's sentencing-related factfinding.

That result cannot be reconciled with *Apprendi*'s and *Blakely*'s core principles: Given the "concurrency default" of

---

[2] ORS 137.123(1) provides, in pertinent part:

"The court may provide for consecutive sentences only in accordance with the provisions of this section. A sentence shall be deemed to be a concurrent term unless the judgment expressly provides for consecutive sentences."

ORS 137.123(4) provides:

"When a defendant has been found guilty of more than one criminal offense arising out of a continuous and uninterrupted course of conduct, the sentences imposed for each resulting conviction shall be *concurrent* unless the court complies with the procedures set forth in subsection (5) of this section."

(Emphasis added.)

Finally, ORS 137.123(5) provides:

"The court has discretion to impose consecutive terms of imprisonment for separate convictions arising out of a continuous and uninterrupted course of conduct *only if the court finds*:

"(a) That the criminal offense for which a consecutive sentence is contemplated was not merely an incidental violation of a separate statutory provision in the course of the commission of a more serious crime but rather was an indication of defendant's willingness to commit more than one criminal offense; or

"(b) The criminal offense for which a consecutive sentence is contemplated caused or created a risk of causing greater or qualitatively different loss, injury or harm to the victim or caused or created a risk of causing loss, injury or harm to a different victim than was caused or threatened by the other offense or offenses committed during a continuous and uninterrupted course of conduct."

(Emphasis added.)

ORS 137.123(4), the maximum aggregate sentence that the court could have "impose[d] solely on the basis of the facts reflected in the jury's verdict," *Blakely*, 542 US at 303, was the amount that could be imposed without additional judicial findings required under ORS 137.123(5). Consequently, the court's findings pursuant to ORS 137.123(5) "expose[d] the defendant to a greater punishment than that authorized by the jury's guilty verdict." *Apprendi*, 530 US at 494.

The essential dispute, on which I differ with the majority, pertains to the proper meaning of "prescribed statutory maximum" as used in *Apprendi* and amplified in *Blakely*. In the state's (and the majority's) view, "prescribed statutory maximum" refers only to the sentence imposed on any individual count viewed in isolation—and not to the defendant's aggregate sentence. In defendant's view, the constitutional inquiry is concerned with both. Although the question may be close in the abstract, given the "concurrency default" feature of ORS 137.123, I agree with defendant.

I reject at the outset the state's suggestion that any extension of the reasoning of *Apprendi* and *Blakely* to the imposition of consecutive sentences is foreclosed because the circumstances addressed in those cases were, in the state's words, "offense-specific." Certainly, the particular circumstances in *Apprendi* and *Blakely* were "offense-specific." But, respectfully, "So what?" Neither opinion in its reasoning or holding, nor any subsequent opinion of the Court, expressly imposes such a limitation. The question of constitutional constraints, if any, on the sentencing court's imposition of consecutive sentences simply was not at issue in those cases.[3]

---

[3] In *Apprendi*, the state attempted to make the obverse of the argument here, *viz.*, that the enhanced sentence that the court imposed on one count was not unconstitutional because that sentence did not exceed the total sentence that the court could have imposed if it had elected to impose consecutive, rather than concurrent, sentences. There, the defendant was convicted of, *inter alia*, two counts of unlawful possession of a firearm; the statutory maximum sentence for that crime was 10 years, and the court, upon finding that the defendant had acted from a racially biased motive, imposed a 12-year sentence on one count but imposed a concurrent sentence on the other count. The state reasoned that, because the court could have imposed consecutive 10-year sentences on the two counts, the 12-year sentence was within the 20-year *total* "statutory maximum" sentence. The Court rejected that argument:

"The constitutional question, however, is whether the 12-year sentence imposed on count 18 was permissible, given that it was above the 10-year maximum for the offense charged in that count. * * * The [consecutive sentence

Consequently, I must determine whether, or to what extent, the reasoning that lies at the core of those decisions applies in this context. That is the nature of the judicial process.

The state argues, nevertheless, that the relevant "statutory maximum" for purposes of the Sixth Amendment in situations concerning multiple crimes arising from a continuous and uninterrupted course of conduct is *not* the maximum sentence that may be imposed pursuant to ORS 137.123 without judicial factfinding. Rather, the state contends that the "statutory maximum" for constitutional purposes must be assessed on an offense-by-offense basis—and, so long as each of those sentences rests on facts found by the jury, the Sixth Amendment is unconcerned with how much time a defendant will actually spend in prison for the totality of those crimes.

I readily acknowledge that the state's approach—which the majority adopts—is not without intuitive appeal. Nevertheless, I cannot reconcile its result with the principles expressed in *Apprendi* and amplified in *Blakely*. Again, those decisions preclude judicial factfinding that, as a practical and functional matter, increases a criminal defendant's *"punishment." See Blakely*, 542 US at 303; *Apprendi*, 530 US at 494 (emphasis added). Again, that is what occurred here by virtue of the sentencing judge's findings pursuant to ORS 137.123(5).[4]

---

has] no more relevance to our disposition than the dismissal of the remaining 18 counts."

530 US at 474.

[4] The state contends that *Lewis v. United States*, 518 US 322, 116 S Ct 2163, 135 L Ed 2d 590 (1996), supports the proposition that the Sixth Amendment does not apply to aggregated sentences, but only to individual sentences. In *Lewis*, the Court addressed the question whether the right to a jury trial under the Sixth Amendment attached when a defendant was charged with multiple "petty offenses," each punishable by no more than six months' imprisonment. The Court noted that an "offense carrying a maximum prison term of six months or less is presumed petty," and, unless the legislature has provided additional severe statutory penalties, a defendant will not be entitled to a jury trial under the Sixth Amendment. *Id.* at 326. The Court rejected the defendant's argument that his entitlement to a jury trial should be determined based on the aggregation of possible sentences for multiple charges of petty offenses:

"[W]e determine whether an offense is serious by looking to the judgment of the legislature, primarily as expressed in the maximum authorized term of imprisonment. Here, by setting the maximum authorized prison term at six months, the Legislature categorized the offense of obstructing the mail as

I fully appreciate that the result I urge differs not just from the majority but also from the holdings of most other state appellate courts that have addressed the same issue. *Compare People v. Wagener*, 196 Ill 2d 269, 752 NE 2d 430, *cert den*, 534 US 1011 (2001); *State v. Smylie*, 823 NE 2d 679 (Ind), *cert den*, ____ US ____ , 126 S Ct 545 (2005); *People v. Black*, 35 Cal 4th 1238, 29 Cal Rptr 3d 740, 113 P3d 534, *cert pending* (2005); and *State v. Cubias*, 155 Wash 2d 549, 120 P3d 929 (2005), *with In re VanDelft*, 158 Wash 2d 731, 147 P3d 573 (2006), *State v. Foster*, 109 Oh St 3d 1, 845 NE 2d 470, *cert den*, ____ US ____ , 127 S Ct 442 (2006), and *Cubias*, 155 Wash 2d at 557-58, 120 P3d at 933 (Madsen, J., concurring). Nevertheless, for the reasons that follow, I am unpersuaded by the reasoning of most of those courts.

I begin with *Wagener*, which antedated *Blakely*. There, the Illinois Supreme Court considered the constitutionality of a statute that allowed a court to impose a consecutive sentence after the court had found that such a sentence was " 'required to protect the public.' " 196 Ill 2d at 280, 752 NE2d at 438 (*quoting* 730 ILCS 5/5-8-4(b)). The court first noted that "*Apprendi* explicitly disclaimed any holding regarding consecutive sentencing," 196 Ill 2d at 284, 752 NE2d at 441, pointing to the Court's framing of the issue as " 'whether the 12-year sentence imposed on count 18 was permissible,' " *id.* (*quoting Apprendi*, 530 US at 474), and the Court's rejection of the state's invitation to consider the constitutionality of the sentences in the aggregate. The Illinois

---

petty. The fact that petitioner was charged with two counts of a petty offense does not revise the legislative judgment as to the gravity of that particular offense, nor does it transform the petty offense into a serious one, to which the jury trial right would apply."

*Id.* at 327. The Court further noted that, if it were to accept the defendant's approach, "the Government could properly circumvent the jury trial right by charging the counts in separate informations and trying them separately." *Id.* at 330.

*Lewis* is inapposite. It concerned whether a defendant was entitled to a jury at all. Here, there is no dispute that the crimes are not "petty" and that defendant had a right to a jury trial; rather, the question is whether, given defendant's entitlement to a jury trial, the determination of certain facts was properly committed to the jury and not the court. Further, as *Apprendi* and *Blakely* make clear, the touchstone of the inquiry here is *not*, as in *Lewis*, one of legislative judgment. Thus, *Lewis*, which antedated *Apprendi* and *Blakely*, sheds no light on the Court's view of judicial factfinding in support of consecutive sentences.

court then declined to apply *Apprendi* to factfinding in support of consecutive sentencing, concluding:

> "We are bound to follow the United States Supreme Court's interpretation of the Constitution of the United States. * * * But we are not bound to extend the decisions of the Court to arenas which it did not purport to address, which indeed it specifically disavowed addressing, in order to find unconstitutional a law of this state."

196 Ill 2d at 287, 752 NE2d at 443-44 (some citations omitted).

With respect, the Illinois court's premise that the Court in *Apprendi* "specifically disavowed addressing" consecutive sentencing is erroneous. Rather, as noted, *see* 210 Or App at 92-93 n 4 (Haselton, J., dissenting), the Court rejected New Jersey's invitation to treat any error in the defendant's sentence as harmless based on the notion that "even without the trial judge's finding of racial bias, the judge *could* have imposed consecutive sentences on [other counts] that would have produced the 12-year term of imprisonment that Apprendi received." *Apprendi*, 530 US at 474 (emphasis added). The Court explained that the constitutional question before it was whether the sentence imposed on a specific count was permissible. *Id.* Thus, far from implicitly foreclosing the application of its analysis to factfinding necessary for the imposition of consecutive sentences (as the Illinois court believed), the Court in *Apprendi* had no occasion to address that question.

Perhaps more fundamentally, the Illinois court's holding in *Wagener* was the product of judicial caution, of hesitation to extend the recently decided *Apprendi* beyond its particular circumstances pending further development and instruction. *Blakely*, however, afforded that guidance, amplifying *Apprendi*. Given that guidance, I perceive no persuasive principled limitation on the application of *Apprendi*'s and *Blakely*'s reasoning to judicial factfinding necessary for the imposition of consecutive, rather than presumptively concurrent, sentences.

In *Smylie*, the Indiana Supreme Court reached a result similar to that in *Wagener*, albeit for somewhat different reasons. There, the court noted that, when sentencing "on

multiple counts, an Indiana trial judge may impose a consecutive sentence if he or she finds at least one aggravating factor" and that the finding of an aggravating factor is "a requirement before a consecutive sentence may be imposed." 823 NE2d at 686. Nevertheless, the court concluded that

> "our statutes do not erect any target or presumption concerning concurrent or consecutive sentences. Where the criminal law leaves sentencing to the unguided discretion of the judge there is no 'judicial impingement upon the traditional role of the jury.' "

*Id.* (quoting *Blakely*, 542 US at 309).

Again, with respect, I do not understand that reasoning. In particular, I do not understand how, if a sentencing scheme requires a court to make findings of aggravating circumstances before the court can impose a consecutive sentence, the court is exercising the sort of unlimited discretion that the Court indicated in *Blakely* would be permissible. 542 US at 308-09. That is, the exercise of "discretion" is hardly unlimited—it is conditioned upon predicate judicial factfinding—and, but for those findings, the defendant would receive a concurrent sentence. *Accord Blakely*, 542 US at 305 ("Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact (as in *Apprendi*), one of several specified facts (as in *Ring*), or *any* aggravating fact (as here), it remains the case that the jury's verdict alone does not authorize the sentence." (Emphasis in original.)).[5]

In *Cubias*, a closely divided decision, the Washington Supreme Court addressed the application of *Apprendi* and *Blakely* to Washington's consecutive sentencing scheme, *see* Revised Code of Washington (RCW) 9.94A.589(1), which, like

---

[5] *Black* appears to be similarly flawed. Under California law, like Oregon law, when sentencing on multiple convictions, if the court "fails to direct how the terms are to run, *they must run concurrently*." 35 Cal 4th at 1261-62, 29 Cal Rptr 3d at 756, 113 P3d at 548 (emphasis added). If a judge desires the sentences to be served consecutively rather than concurrently, "he or she must state on the record the primary factor or factors that support the exercise of discretion." *Id.* (internal quotation marks and citations omitted). In *Black*, the court concluded that a jury's finding of guilt on multiple offenses "authorizes the statutory maximum sentence for each offense," and that a judge's determination of whether those sentences are to be served concurrently or consecutively does not "usurp[ ] the jury's historical role." *Id.* at 1263, 29 Cal Rptr 3d at 757, 113 P3d at 549.

Oregon's, provides that "sentences for concurrent offenses are presumed to run concurrently with limited exceptions" and to "impose a consecutive sentence, the court must make additional findings of fact." 155 Wash 2d at 557, 120 P3d at 933 (Madsen, J., concurring). The court's majority viewed the issue in essentially the same manner as did the Illinois court in *Wagener*: "*Apprendi* does not have any application to consecutive sentences; to conclude otherwise would extend *Apprendi*'s holding beyond the narrow grounds upon which it rested." *Cubias*, 155 Wash 2d at 553, 120 P3d at 931. However, the concurring judges in *Cubias* pointed out—and I agree—that *Apprendi* was not so circumstantially circumscribed. Thus, in the concurring judges' view:

> "There can be little doubt that imposing consecutive sentences dramatically increases the presumptive quantum of punishment the legislature authorized the trial court to impose, absent exceptional circumstances. For Sixth Amendment purposes, there is no difference between an exceptional sentence that increases the length of a sentence for one count beyond the range, and an exceptional *consecutive* sentence that increases the presumptive length of incarceration. Both serve to keep a prisoner incarcerated longer than would be the case if the presumptive sentences were imposed. In both cases, the overall length of imprisonment has increased, and in both cases, a judge made additional findings of fact in order to sentence beyond the presumptive period of incarceration authorized by the legislature.
>
> "* * * * *
>
> "There is *no* principled basis to distinguish between exceptional individual sentences and exceptional consecutive sentences; in each case the decision to depart from the presumptive sentence is based on a factual determination made by a judge."

155 Wash 2d at 558-59, 561, 120 P3d at 934-35 (Madsen, J., concurring) (internal quotation marks omitted; emphasis in original).[6]

---

[6] Those judges concurred in the result in that case because they concluded that the jury did, in fact, make the requisite findings to support imposition of a consecutive sentence. 155 Wash 2d at 562, 120 P3d at 933 (Madsen, J., concurring).

More recently, in *Foster*, the Ohio Supreme Court unanimously held that that state's consecutive sentencing provisions that required judicial factfinding ran afoul of the Sixth Amendment principle announced in *Apprendi*. The court concluded:

"R.C. 2929.41(A) states, 'Except as provided in [specific sections including R.C. 2929.14(E)], a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term.' Thus, except for certain enumerated statutes imposing nondiscretionary consecutive terms, judicial fact-finding must occur before consecutive sentences may be imposed under R.C. 2929.14(E)(4). We have held previously that R.C. 2929.14(E)(4) * * * require[s] trial courts that impose consecutive sentences to make the statutorily enumerated findings and to give reasons at the sentencing hearing to support those findings for review on appeal.

"Thus, with limited exceptions, the Ohio Revised Code provides that consecutive sentences in Ohio may not be imposed except after additional fact-finding by the judge. In *State v. Lett*, 161 Ohio App 3d 274, 829 NE 2d 1281 [2005], an en banc decision, the Eighth Appellate District held that *Blakely* is inapplicable to consecutive sentencing because 'the facts found by the court do not increase the maximum penalty for an individual offense.' This is true; nevertheless, because the total punishment increases through consecutive sentences only after judicial findings beyond those determined by a jury or stipulated by a defendant, R.C. 2929.14(E)(4) violates principles announced in *Blakely*."

109 Oh St 3d at 21-22, 845 NE2d at 490-91 (citations, footnotes, and emphasis omitted).

Finally, and most recently, in *VanDelft*, the Washington Supreme Court revisited *Blakely*'s proper application to that state's consecutive sentencing scheme. Although in *Cubias*, the closely divided court had determined that *Blakely* did not preclude the imposition of consecutive sentences pursuant to RCW 9.94A.589(1)(b),[7] in *VanDelft*,

---

[7] RCW 9.94A.589(1)(b) provides:

"Whenever a person is convicted of two or more serious violent offenses arising from separate and distinct criminal conduct, the standard sentence range for the offense with the highest seriousness level under RCW 9.94A.515

the court unanimously held that the imposition of a consecutive sentence pursuant to RCW 9.94A.589(1)(a) did violate *Blakely*. RCW 9.94A.589(1)(a) provides, in pertinent part, as follows:

> "Sentences imposed under this subsection shall be served concurrently. Consecutive sentences may only be imposed under the exceptional sentence provisions of RCW 9.94A.535."[8]

The court concluded:

> "[T]he facts found by the trial judge in this case went beyond the jury verdict and changed the nature of the sentence that the defendant was entitled to expect for count 1 from concurrent to consecutive. The trial judge's findings operated to elevate the punishment for a nonserious violent offense to the realm of punishment for serious violent offenses based on facts not reflected in the jury's verdict. *See Blakely*, 542 U.S. at 303; *Apprendi*, 530 U.S. at 494 * * *.

> "More importantly, there is no dispute that the legislature has characterized consecutive sentences imposed under (1)(a) as exceptional, requiring a finding of an aggravating factor for support. RCW 9.94A.535. In fact, in order to overcome the presumption of concurrent sentencing in (1)(a), the sentencing judge in this case employed the very exceptional sentencing scheme at issue in *Blakely*."

*VanDelft*, 158 Wash 2d at 742, 147 P3d at 579.

In sum, appellate courts from other jurisdictions with similar consecutive sentencing laws are divided on the question presented here. It is, frankly, tempting to do as the

---

shall be determined using the offender's prior convictions and other current convictions that are not serious violent offenses in the offender score and the standard sentence range for other serious violent offenses shall be determined by using an offender score of zero. The standard sentence range for any offenses that are not serious violent offenses shall be determined according to (a) of this subsection. All sentences imposed under (b) of this subsection shall be served consecutively to each other and concurrently with sentences imposed under (a) of this subsection."

[8] The court explained that the difference in operation between subsections (1)(a) and (1)(b) is that the former applies to sentencing of "[f]elonies that are not serious violent offenses," *VanDelft*, 158 Wash 2d at 738, 147 P3d at 577, and the latter, by its terms, pertains solely to "serious violent offenses arising from separate and distinct criminal conduct."

majority has done and decline to apply *Apprendi* and *Blakely* to imposition of consecutive sentences pending further instruction—or compulsion. And yet, unlike the court in *Wagener* and the majority in *Cubias*, I cannot agree that the reasoning and holdings in *Apprendi* and *Blakely* are preclusively "offense-specific." And like the courts in *VanDelft* and *Foster* and the concurrence in *Cubias*, given my understanding of the core principles that informed *Apprendi* and *Blakely*, I see no principled basis for declining to apply those principles to the imposition of consecutive sentences pursuant to ORS 137.123(5).

In sum, I would conclude that the imposition of consecutive sentences based on judicial findings of fact pursuant to ORS 137.123(5) violates the Sixth Amendment to the United States Constitution. Consequently, the case should be remanded for resentencing.

I respectfully dissent.

Schuman, Ortega, and Rosenblum, JJ., join in this dissent.